TOWN OF BOCA RATON, a municipal corporation, v. CLINT MOORE, consolidated with CLINT MOORE.

165 So. 279.
Opinion Filed January 10, 1936.

*Gedney, Johnston & Lilienthal, William L. Ransom* (New York City) and *Metcalf & Finch,* for Appellants; *Giles J. Patterson and Williamson & Cain,* for Appellee.

PER CURIAM.—This is a rehearing of the consolidated cases decided and reported at 159 So. 673. That opinion did not discuss the facts upon which the decrees of the court were based, but was confined to the law on the case.

Two separate causes were begun in the lower court.

In one case, a taxpayer, the Spanish River Land Co., brought a bill in equity to restrain the town of Boca Raton, its officers and agents from raising or attempting to raise by taxation any moneys to pay principal or interest on account of certain lien certificates, and from paying or attempting to pay any moneys of the town of Boca Raton raised by taxation or otherwise on account of the principal or interest on said lien certificates; to enjoin George W. Harvey, the George W. Harvey Realty Co. and Clint Moore and those claiming under them from instituting and prosecuting any suits upon said lien certificates; to declare the resolution of the town of Boca Raton adopted January 5, 1929, illegal, null and void and of no effect; to declare the assessments and the lien certificates null and void and of no effect.

The final decree of the court in that case was entered in the following language:

"It is ordered, adjudged and decreed that the contract entered into between the town of Boca Raton and the Villa Rica Paving Company under date of April 23, 1927, be and it is hereby cancelled; that the town of Boca Raton be restrained from making any tax levy and from making any payments, on account of said contract; that the town of Boca Raton be restrained from making any tax levy and from making any payments, for or on account of lien cer-

tificates numbered from one (1) to eight hundred sixty-five (865) both inclusive, bearing date of July 17, 1929, and issued pursuant to resolutions of the town of Boca Raton adopted June 15, 1929; that the bill be dismissed as to the defendant George W. Harvey and the defendant George W. Harvey Realty Co., that costs in the amount of $.............. including compensation of the General Master in the amount of $.............. be taxed against the complainant, the town of Boca Raton and the defendant Clint Moore, so that each shall pay one-third thereof, for which let execution issue."

In the other case, the town of Boca Raton brought a bill in equity against Clint Moore and John J. Heffernan to restrain them from collecting or attempting to collect from plaintiff for work done and materials furnished in grading and paving streets, constructing curbs, gutters and headers in Villa Rica Subdivision growing out of contract of April 23, 1927, or any lien certificates or other evidence of indebtedness issued or attempted to be issued under such contract; to enjoin defendants from prosecuting or attempting to prosecute any action in a court of law, based upon or in any way growing out of said contract; to adjudge said contract not only null and void, but illegal and entered into contrary to law, and that all lien certificates based upon or growing out of such contract are null and void, and that plaintiff is not indebted by virtue of said contract, or lien certificates or other evidences of indebtedness for work done or materials furnished in improving the streets in Villa Rica Subdivision; that if it should be decided that plaintiff should pay any sum by virtue of work done and materials furnished under said contract or lien certificates that an accounting be had to determine the amounts plaintiff should pay, designating to whom payments should be

made, the amount to be paid each, the instrument on which the obligation is based, and other matters so that full and complete justice might be accomplished.

On October 10, 1932, Clint Moore and John J. Heffernan were temporarily restrained from prosecuting or attempting to prosecute against the town of Boca Raton any action at law based upon, or in any way growing out of or pertaining to said contract.

The temporary restraining order was dissolved as to Clint Moore by an order of the court dated February 17, 1933, which order was set out in full in the former opinion in this case found at 159 So. 673.

The final decree in the case dismissed the bill of complaint as to Clint Moore; made the restraining order permanent as to John J. Heffernan, dismissed the counter claim of John J. Heffernan; decreed the contract of April 23, 1927, void as to John J. Heffernan; and cancelled certain certificates held by John J. Heffernan. This decree was also set out in full in 159 So. 673, 674.

On December 22, 1932, it was stipulated by the parties that both cases would be consolidated; but that they would retain their separate identity and that separate final decrees would be entered in each case. Pursuant to the stipulation, the court entered its order that the causes be consolidated on the terms stipulated.

Some pertinent facts brought out in the testimony were as follows:

On April 23, 1927, the town of Boca Raton contracted with the Villa Rica Paving Company to do the construction work in Villa Rica Subdivision. The principal officers of the Villa Rica Paving Company were George W. Harvey and his son-in-law, George D. Hall, who were also the principal officers in the George W. Harvey Realty Company.

Both corporations occupied the same offices. Conditions were so strict that only the Villa Rica Paving Company made any bid for the contract. The contract price for paving was $3.50 per square yard plus 6% additional for engineering and other expenses; whereas five witnesses testified that the reasonable worth of the paving at that time was $1.38-$1.15 per square yard. The contract price for curbs and gutters was $1.50 per lineal foot plus 6% additional for engineering and other expenses; whereas the same five witnesses testified that the reasonable worth of the curbs and gutters was 90c-85c per lineal foot. Further testimony showed that costs were not so great in 1929 when the work was done as in 1927 when the contract was made.

The town commission, on May 4, 1927, passed Ordinance No. 62 assessing the cost of construction of curbs and gutters and street paving in Villa Rica Subdivision.

Work by Villa Rica Paving Company under the contract ceased on September 1, 1927, at which time the contract was assigned to Clint Moore.

No work was done under the contract by Clint Moore from the time of assignment thereof until the spring of 1929, nearly three years after collapse of the real estate "boom." The time for completion of the contract expired in October, 1928. Yet the town commission of Boca Raton, on January 5, 1929, passed a resolution by which they attempted to extend for one year the time for completion of the contract.

The Villa Rica Subdivision was located within the town limits of Boca Raton; but the southern boundary of Villa Rica was two miles from any business house or residence in the town. The streets in Villa Rica were not useful as avenues of communication because they came to dead ends in the subdivision. No permanent resident ever lived in

.Villa Rica. Five or six houses were partially constructed there but none were ever completed. The pavilion and the real estate office were for a few months occupied by vendors of cold drinks and sandwiches, but both have since been burned down. The selling of lots in Villa Rica was begun by the George W. Harvey Realty Company in 1924 and continued until the spring of 1926, when the real estate "boom" collapsed.

At the time the work was done by Clint Moore, the estimated cost of the paving, gutters and headers constructed in Villa Rica was $1,100,000.00, while the assessed valuation of all property in the town of Boca Raton was $4,891,860.00.

On July 17, 1929, a new set of town commissioners were elected under a new city charter. Clint Moore ceased work about that time. The new commissioners, insofar as they were able, repealed the actions of the former council regarding the contract and the lien certificates.

The two final decrees rendered and which were appealed, were considered by this Court in its former opinion of Moore v. Spanish River Land Co., 159 So. 673, wherein the decrees were affirmed except insofar as they might be construed as holding that recovery upon *quantum meruit* was limited to the amount of benefits obtained by the municipality by reason of the alleged improvements.

Under the principle of *res adjudicata,* a final decree or judgment on the merits, which is unreversed, is conclusive on the parties litigant as to that same cause of action. See: Prall v. Prall, 58 Fla. 496, 50 So. 867; Jackson v. Bullock, 62 Fla. 507, 57 Sou. 355; Hays v. Salisbury, 92 Fla. 446, 109 So. 617; Wade v. Clower, 94 Fla. 817, 115 So. 548.

"Public policy and the interest of litigants alike require .that there be an end to litigation, and the peace and order of society demand that matters distinctly put in issue and de-

termined by a court of competent jurisdiction as to parties and subject matter shall not be retried between the same parties in any subsequent suit in any court. The doctrine of *res judicata* not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings which otherwise would be endless." 15 R. C. L. 954, Sec. 430.

A judgment on the merits is an absolute bar to a subsequent action on the same claim, and concludes the parties and their privies, not only as to every matter which was offered and received to sustain or defeat the claim, but also as to any other admissible matter that might have been offered for either purpose. Sauls v. Freeman, 24 Fla. 209, 4 So. 525; Hays v. Salisbury, 92 Fla. 446, 109 So. 617; Wade v. Clower, 94 Fla. 817, 114 So. 548.

Upon the same general principle of bringing to an end litigation between the same parties concerning the same subject matter, matters that have been decided by this Court will not be reconsidered upon rehearing "unless there is basis for this in mistake or omission of the Court, or other like cause, for which the rehearing was granted," materially affecting such points. See: Christy v. Burch, 25 Fla. 978, 6 So. 857.

The first question presented by brief of appellant is whether chancery had jurisdiction to cancel the contract and lien certificates held by the contractor; and to enjoin the contractor from prosecuting any action at law for recovery of damages for breach of the contract and work done thereunder, or for recovery upon the lien certificates.

The chancellor granted complete relief as to John J. Heffernan, assignee of certain lien certificates; but denied relief and dismissed the bill as to Clint Moore, the con-

tractor, because as the chancellor said in dismissing the temporary restraining order against Moore:

"I am of the opinion that the law court is competent to adjudicate the controversy between the municipality and Moore without recourse to a court of equity.

"There seems to be *no interpleader, multiplicity of suits* or *accounting* that would properly confer equitable jurisdiction on this court. The questions of alleged fraud and validity of the contract may be presented in the common law action." (Emphasis supplied.)

"As is well known, courts of equity will not assume jurisdiction where the powers of the ordinary courts are sufficient for the purposes of justice; that is, where the plaintiff can have as effectual and complete a remedy in a court of law as in a court of equity, and that remedy is direct, certain and adequate. But where there is a clear right, and yet there is no remedy in a court of law, or the remedy is not plain, adequate and complete, and adapted to the particular exigency, then in such cases courts of equity will assume jurisdiction. Accordingly *equity will not decree* the *cancellation* of a written instrument *when the legal remedy by* an action or *defense is plain, adequate and complete.* This principle is subject to the qualification, however, that to exclude the equitable jurisdiction, the legal remedy must be, in all respects, as satisfactory as the relief furnished by a court of equity. Accordingly, while it is generally held that *fraud in the procurement of a contract is not of itself sufficient to take a case out of the rule,* it is equally well settled that chancery will exercise its concurrent jurisdiction where it may grant more complete relief by compelling the cancellation or surrender of the instrument fraudulently obtained. In general, however, *the burden of proof is on the plaintiff to show that his legal remedy is inadequate* and

failure to make this showing will prevent a decree of cancellation." 4 R. C. L. 490, Sec. 5 (emphasis supplied).

The action of *quantum meruit* is essentially a common law remedy, concerning which chancery has no authority to exercise jurisdiction, unless such is conferred by some substantial ground of equitable jurisdiction. ·

The chancellor found that no multiplicity of suits, interpleader or accounting was involved in the case and refused to take jurisdiction as to Clint Moore by dismissing the bill and dissolving the temporary injunction as to Clint Moore. The findings of the chancellor have support in the record. The conclusion of the chancellor, upon the findings, that jurisdiction should be denied was affirmed by this Court in its former opinion in the case, in which the language as used by the chancellor in· the decree was quoted. Whether this Court would have reached the same conclusion under the same circumstances is not decisive of the question presented. Since the chancellor by final decree denied jurisdiction as to that particular matter, which decree was affirmed on appeal, in the absence of showing of mistakes or omission of this Court ·or other like cause for which rehearing was granted, the decision rendered on the original hearing will be affirmed. See: Christy v. Burch, *supra.*

The second question presented by brief of appellant is whether the chancellor should have cancelled the contract for illegality and the third question was whether the chancellor should have cancelled the lien certificates as to Clint Moore. Both questions will be disposed of together.

Appellant contends the contract is not only void but also illegal because (1) its execution is prohibited under the principles of organic law; (2) its execution is prohibited under Sections 5, 7 and 10 of Article IX of the Constitution of Florida; (3) it was never executed because the

town charter required such contracts to be executed by ordinance, and no ordinance authorizing its execution was ever adopted.

Appellant also contends that the lien certificates should be cancelled.

In the case of taxpayer against the municipality, the chancellor incorporated in the final decree these findings, and that decree was affirmed by this Court.

"This cause was duly presented by counsel for the parties on final hearing and considered by the Court.

"From the record there appears to be little doubt but that the Town Commission was not actuated by the best interests of the Town in attempting to authorize work to be done under the contract of April 23, 1927. Not only was the time most inopportune and the unit price unreasonably excessive, but there was an obvious attempt on the part of the town officials to aid a private developer by extending public credit in an enterprise that was of very doubtful, if any, value to the municipality.

"The alleged *contract was never duly authorized* by the town or performed by either the contractor or its assignee. *Neither were the certificates duly authorized* or based upon any equitable assessments.

"The *certificates ought to be cancelled* by this final decree, *except* for the fact that from the present record it seems to be *impossible* to *definitely identify* their *ownership*. While it does appear that George W. Harvey and the George W. Harvey Realty Company do not now own any of the certificates, it cannot be ascertained how many or which ones are owned or held by the defendant Clint Moore, and which ones are owned by those not parties to the suit.

"Doubtless an injunction might have properly issued to prevent the performance of the work, but as the *town was*

*authorized* under the law *to construct streets, curbs and gutters* and *no mandatory provision of* the *charter* seems to have been *violated,* I think it is *too late* now *for* the *taxpayer to deprive the contractor of a jury trial upon* a *quantum meruit* basis for the reasonable value, if any, of the alleged improvements to the municipality.

"As against the municipality, the contractor and holder of the lien certificates, the *taxpayer seems to have no adequate remedy at law."* (Emphasis supplied.)

These findings of the chancellor have abundant support in the record. In view of the fact that the chancellor and this Court on appeal by affirming the final decree in that case adopted these findings, they should be conclusive, under the principle of *res adjudicata,* upon the parties to this appeal, in this or any subsequent litigation relating to this contract or to these lien certificates.

The final decree in that case cancelled the contract of April 23, 1927; and enjoined the municipality from making any tax levy or from making any payments on account of said contract or on account of said lien certificates, which decree was affirmed on appeal. The final decree in the other case refused to grant relief as to Clint Moore, the relief asked being to cancel the contract and lien certificates as to Clint Moore. In view of the injunction preventing the Town of Boca Raton from paying out any moneys or raising by taxation any moneys on account of the contract or on account of the lien certificates, the refusal of the chancellor to decree the contract illegal and the lien certificates void has not been prejudicial to the rights of the Town of Boca Raton. Upon the principle laid down in Christy v. Burch, *supra,* this Court cannot go into these questions on rehearing.

The fourth question presented in the brief of appellant is

whether the chancellor should have entered the same decree in both cases that were before him in equity.

That question was answered by this Court in the negative when both decrees of the chancellor, though not alike, were affirmed on appeal.

Those two decrees are not inconsistent, but rather complementary the one of the other. They must both be construed together, since under the principle of *res adjudicata* both are conclusive on the parties. In one decree the Town of Boca Raton was enjoined from raising by taxation any moneys or from paying out any moneys either on account of the contract or the lien certificates issued thereunder. By the other decree Clint Moore was allowed to pursue any remedy at law that he might have. Now since Clint Moore could not·recover anything if he sued on the contract or lien certificates and obtained judgment, because of the permanent injunction against the Town of Boca Raton, he is effectually confined to suing at law for the reasonable worth, if any, of the alleged improvements made in Villa Rica; and in such action the Town of Boca Raton may bring in fraud and the invalidity of the contract under which the work was performed, and any other defense it may wish to interpose.

Affirmed as before.

WHITFIELD, C. J., and ELLIS, TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., dissents in part.

BROWN, J. (dissenting in part).—My view is that no recovery can be had on *quantum meruit* for work done or materials furnished through or under an illegal contract, a contract made in violation of Sections 5, 7 and 10 of Article IX of the Constitution, especially where, as here, there were no resultant benefits to the party sought to be charged,

which party here is the town, but in the ultimate, the inhabitants and taxpayers of the town. And if the Circuit Court could properly cancel the express contract and restrain any recovery upon it, it seems to me that it could likewise restrain any action against the town of *quantum meruit* for work done and materials furnished under such contract. Hartford Fire Ins. Co. v. Brown, 119 Fla. 610, 160 So. 657, and cases cited. That no action for *quantum meruit* lies in cases of this kind has been settled by the decisions of this court. See Jones v. Pinellas County, 81 Fla. 613, 88 So. 388; Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14; Boca Raton v. Raulerson, 108 Fla. 378, 146 So. 576. See also 19 R. C. L. 1061-1064, and State v. Hillsborough County, 113 Fla. 394, 151 So. 712.