W. J. Baker v. The City of Fort Worth.

No. A-1480. Decided March 31, 1948.
Rehearing overruled May 19, 1948.
(210 S. W., 2d Series, 564.)

*Slay & Slay* and *Robert Harrison,* all of Fort Worth, for petitioner.

*R. E. Rouer, Heard L. Floore, Sam A. Woodward,* all of Fort Worth, for resepondent.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This suit was filed by the petitioner, W. J. Baker, on September 9, 1946, against the respondent, City of Fort Worth, for flood damages to his land and personal property suffered in March 1945 as a result of the City's erecting a bridge, its approaches and embankments, across the Clear Fork of the Trinity River in 1937. The improvement was alleged to have obstructed and diverted the natural flow of the water in the flood channel of the river so as to overflow about 10 acres of petitioner's land therein situated and upon which he owned and operated a nursery and retail floral business. It was further alleged that by reason of the diversion of the flood waters the petitioner suffered damage to his flowers, nursery stock, office records, assorted merchandise, and miscellaneous equipment, in the sum of $17,874.60, and damages to his land in the sum of $12,500.

As a defense the city alleged that all or a substantial part

of the damages inflicted were due to the joint action of the overflow waters and waste oil coming from the property of the Texas & Pacific Railway Company and the International-Great Northern Railroad Company. For that damage it was asserted that petitioner had executed a full and complete release to the railroad companies, receiving therefor the sum of $11,000.00, which action, the city claimed, relieved it of any further liability. It also alleged that the bridge was a permenent structure; that the damages, if any, were permanent and continuing from the time the bridge was built; and that the action was barred by limitation of two and four years. Arts. 5526 and 5529, Vernon's Ann. Civ. St.

The trial court overruled the defensive pleas of the city and submitted special issues to a jury, which found that petitioner had suffered damages to his personal property in the sum of $11,137.50 by reason of the flood waters on the occasion in question. It also found damages to the land in the sum of $3,000.00, but further found that the land had been benefitted in the sum of $3,000.00 by the opening of the street and the construction of the bridge. The trial court thereupon offset the benefits to the land against the damages, and rendered judgment for petitioner in the sum of $11,137.50, representing damages to the personal property only.

The Court of Civil Appeals sustained the limitation pleas, reversed the judgment of the trial court, and rendered judgment for the city. 205 S. W. (2d) 68. That court was of the opinion that the injury was permanent and continuing, and that the cause of action therefor arose more than two years before the suit was filed. That view was based in part upon the fact that in April, 1942, there was a small flood which overflowed petitioner's premises and inflicted some slight damage to his property. However, the injury then suffered was so negligible that petitioner did not file a claim for reimbursement. Nonetheless, the Court of Civil Appeals held that it was of sufficient intensity to charge petitioner with notice that it would recur with each succeeding flood; that if limitation did not begin to run at the time of the completion of the bridge in 1937, a continuing cause of action at least arose in April, 1942; and that, in any event, the present claim was barred by limitation under either the two-year or four-year statute.

We are not in accord with the holding of the Court of Civil Appeals. The erection of the bridge with its approaches was a lawful undertaking. It did not within itself constitute a nuisance.

It was not constructed upon petitioner's land, nor did it constitute an invasion of his rights or premises at the time it was built. Though the structure was permanent in character, no immediate injury arose, and the injuries resulting were only in consequence of some intervening cause.

■■ The law governing limitation of such actions as this was announced by this court in the early case of Austin & N. W. Ry. Co. v. Anderson, 79 Texas 427, 15 S. W. 484, 485, where a landowner sued the railway company for damages for injuries caused by occasional overflows of surface water which had been diverted from its natural channel by the construction of the defendant's road. In almost an exact factual situation as here involved, this court, in sustaining the action of the trial court in overruling the plea of limitation, said:

"The question is, when did the cause of action accrue,—at the time of the erection of the embankment and culverts, or at the date of the injury? Chief Justice Stayton, in the case of Water-Works v. Kennedy, 70 Tex. 233, 8 S. W. Rep. 36, discusses the question, and gives us a rule. He says: 'When the act is in itself lawful as to the person who bases an action on injuries subsequently accruing and consequent upon the act, it is held that the cause of action does not accrue until the injury is sustained. * * * If, however, the act of which the injury was the natural sequence was a legal injury, by which is meant an injury giving cause of action by reason of its being an invasion of plaintiff's right, then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damage resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar.' * * * We conclude from the authorities that, where a nuisance is permanent and continuing, the damages resulting from it should all be estimated in one suit, but where it is not permanent, but depends on accidents and contingencies so that it is of a transient character, successive actions may be brought for injury as it occurs; and that an action for such injury would not be barred by the statute of limitations, unless the full period of the statute had run against the special injury before suit. The building of the embankment and the culverts as alleged, was not of itself a nuisance. It was no invasion of plaintiff's rights. They were not put on his land. They became a nuisance only at intervals,—by diverting water from rain-falls from its usual flow upon plaintiff's land. The embankment and the culverts

were permanent, but the nuisance was not. There was no constant and continuing injury."

Not only is that the law in this state but it is the universal rule in all the jurisdictions. In 34 Am. Jur. 106, 107, Sec. 131, the text states:

"Where the original act or cause of injury is permanent in its nature, and the damages, both present and prospective, may be recovered in one action, the statute will generally be regarded as attaching at the time the act complained of is done. But where a wrongful act results in a recurring or continuing injury, there is a cause of action not only for the injury consequent upon the original act, but also for such successive ones as may result in the future, in which case the statute attaches at the time of the occurrence of the injury. * * * Again, where an act is not necessarily injurious or is not an invasion of the rights of another, and the act itself affords no cause of action, the statute of limitations begins to run against an action for consequential injuries resulting therefrom only from the time actual damage ensues. The principle is applicable where a structure, although permanent in its character, is not necessarily in itself a permanent and continuing nuisance, but only becomes such in consequence of some intervening cause which produces special injury."

In 37 C. J. 891, Sec. 255, in discussing limitation of actions for damages arising from obstructing or diverting waters and water courses, it is further said:

"Where obstructions erected by defendant, or other acts or omissions by him, not of themselves unlawful as to plaintiff, cause water to overflow plaintiff's land, a cause of action accrues and the statute begins to run when plaintiff sustains damage from the overflow, not when the obstructions are erected or the other acts or omissions occur; and this is true, although the cause of the overflow is an obstruction of gradual growth not causing damage until the lapse of the statutory period after it first began. But when the obstructions constitute of themselves some invasion of plaintiff's rights, the cause of action accrues and the statute begins to run at the time when the obstruction is erected or completed."

The principle announced is plain and simple and has been recognized and followed in innumerable instances by the courts of this state. However, it seems that considerable difficulty has

arisen in the application of the rule to the facts involved in each case. That is the difficulty here, as is evidenced by the opinion of the Court of Civil Appeals. In that opinion some concern was expressed, and intimation made, that the principles expressed in the Anderson case, supra, were not in harmony with those of Rosenthal v. Taylor, B. & H. Ry. Co., 79 Texas 325, 15 S. W. 268, 269, which also involved flood damages against a railway company for impounding waters on land. We do not think the cases are in conflict in any respect. The Rosenthal case did not directly involve limitation, but did involve the fundamental issue upon which it is based, namely, the arising of the cause of action for permanent damages. The railway company constructed an embankment in front of the plaintiff's home in such manner that upon the occasion of each considerable rainfall the water accumulated on plaintiff's premises and there remained until it evaporated. It became so stagnant and offensive as to seriously discommode the plaintiff and his family in the enjoyment of their residence, which this court said was a continuing and permanent nuisance. In determining the measure of damages this court, as it did in the Anderson case, recognized and distinguished the rules to be applied in the two kinds of injuries, and, in connection therewith, used the following language:

"The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have accrued only up to the time of the action will be allowed, but if the nuisance is permanent, and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of the property is the safest measure of compensation. Here it may be inferred from the evidence that the injury recurs upon each considerable rain-fall, and continues during a stage of offensive stagnation until the water evaporates. The defendant seems to have treated the work as permanent, since they have failed upon application, to make a culvert for the passage of the water; and we are of opinion the depreciation in the value of plaintiff's property is the most certain measure of his damages for the injury."

From these and other authorities it is evident to us that

the cause of action here asserted did not arise until the flood in March of 1945. Only one other flood had occurred from the time of the completion of the bridge in 1937 until the flood in 1945, and the former was not of sufficient intensity to constitute a permanent or continuing nuisance. As was said by this court in City of Amarillo v. Ware, 120 Texas 456, 40 S. W. (2d) 57, 62, "where the result is uncertain, the owner of property, if he so desires, has the right to wait, and see what the result will be when the improvements are subjected to an actual test." That rule should be given effect here. The construction of the bridge was lawful, and it was not certain that damages of any kind would ensue. The petitioner should not be penalized for awaiting the disastrous results. In this conclusion, however, we reserve our opinion as to the possible effect of this suit upon similar demands for injuries that may occur in the future. That question is not before us. We merely hold that the present cause of action did not arise until March 1945, and, since the suit was filed within less than two years from the time of that flood, it is not barred by limitation. Clark v. Dyer, 81 Texas 339, 16 S. W. 1061; Parsons v. Uvalde Electric Light Co., 106 Texas 212, 163 S. W. 1, L. R. A. 191 E, 960; City of Athens v. Evans, Tex. Com. App., 63 S. W. (2d) 379; Town of Jacksonville v. McCracken, Tex. Com. App., 232 S. W. 294; Gulf, W. T. & P. R. Co., v. Goldman, 28 S. W. 267; City of Graham v. Moseley, 254 S. W. 130; St. Louis Southwestern Ry. Co. of Texas v. Clayton, 118 S. W. 248, writ denied.

The Court of Civil Appeals did not consider any points presented by the respondent in that court except that with reference to limitation. Although we have jurisdiction of all those assignments, we shall discuss only one of them.

■ The respondent requested an instructed verdict because of the release of the alleged joint tort-feasors, the railway companies. It appears that the release was not for damages from flood waters but for injuries arising from waste oil from the premises of the railway companies which damaged petitioner's land and premises. Those damages, though occurring at the time of the 1945 flood, were separate and distinct from the water damages here in controversy, and constitute a severable cause of action. Sun Oil Co. v. Robicheaux, Tex. Com. App., 23 S. W. (2d) 713. Moreover, the issues upon which the recovery is predicated were so worded as to exclude the damages caused by the oil and to include only those arising from the flood waters occasioned by the construction of the bridge and its

approaches. Under those circumstances, the assignment presents no reversible error.

The other points refer chiefly to the form of the issues submitted and to the refusal of special issues. The trial court fairly and correctly submitted all the issues raised by the pleadings and evidence and refused none to which the respondent was entitled, and those assignments are also without merit.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered March 31, 1948.

Rehearing overruled May 19, 1946.