69 So.2d 881 (1954)
COOPER et al.
v.
COOPER.
Supreme Court of Florida. Special Division A.
January 5, 1954.
Rehearing Denied February 17, 1954.
Bentley & Shafer and Herbert N. Casebier, Lakeland, for appellants.
Raymond C. Smith and Ernest Webb, Lakeland, for appellee.
THOMAS, Justice.
Primarily this is a contest between J.L. Cooper and Grace Cooper, formerly man and wife, the appellant, Ethel Mulkey Cooper being only incidentally involved, so we will refer to the parties as "appellant" and "appellee".
After dissension between the man and his wife had lasted for a considerable period during which a divorce suit was instituted and dismissed, and arrangements affecting community property had been made and unmade a new suit for divorce was instituted by the appellee against the appellant and the bonds of matrimony were severed.
About the time the last suit was started the parties met and the wife signed and delivered to the husband a paper reading as follows:
 "Feb 12  1949
"I Mrs Grace Cooper agrees to Settle with Mr. J.L. Cooper for $300./00 cash, 2 Calves & chickens and on 37 ford truck. And also agree to Sign My part of all Property & Belongings to him For We have agreed to this proposition of our accord. From now & Forever  When the $300.00 is Witnessed by the Lawyer.
 "Signed Mrs. J.L. Cooper"
From the testimony in the record of the instant case it appears that the substance *882 of the informal paper we have copied was put in legal form by an attorney and signed by the parties but this instrument was not brought here for our examination. At any rate it seems reasonable to interpret the transaction as an attempt by the parties to adjust their property rights in anticipation of the divorce.
A short time afterward, 25 March 1949, two deeds were executed by the husband and wife before a notary and the clerk of the circuit court of Polk County conveying to the husband three tracts of land then owned by them as estates by the entireties. We apprehend that this was done to effectuate the wife's agreement "to sign My part of all Property & Belongings to him," that is, all her part except the cash and personal property she was to receive and, we understand, did receive.
The divorce suit then progressed to a final decree and both parties have remarried.
The present suit was instituted by the former wife against the former husband to have set aside the deeds to which we have referred, to have cancelled a mortgage on the property given by the man, to have the parties declared tenants in common, and to have the property sold and the proceeds distributed.
We go now to an analysis of the bill. First there appears a rather brief history of the fiscal affairs of the two principals from the time of their marriage until their separation and a picture of how their fortunes waxed and waned, with sidelights on their domestic difficulties. This introduces the occasion when the deeds were executed. According to her bill the woman was walking along the street when the man drove alongside and ordered her into his car. She obeyed, thinking he intended to take her home but instead he reversed his course and when she attempted to get out he "violently grabbed and pinched the plaintiff's legs * * *." He then drove to the court house and took the woman to the clerk's office where the "two deeds had been prepared or were being prepared and completed." When the instruments were ready the man told her to sign. "She did sign them without any explanation given to her and she requested no explanation for the reason that she feared the violence and threats and abuse of J.L. Cooper if she did not sign the deeds." At this point we say that hitherto the pleading has been silent of threats, and that violence and abuse consisted only of his grabbing her and pinching her legs.
Immediately following is the bald charge that she signed the deeds "under threats, duress and compulsion * * * without semblance of any consideration to herself or otherwise." The allegations of duress are wholly insufficient because no statement connects them with the execution of the deeds, nor did the pleader set out what was threatened to be done if she refused to sign. The man was doubtless in foul humor but the allegations of duress and compulsion are so vague as to amount to nothing more than conclusions. The averment about "consideration" is no stronger, as we know from the paper she signed that she did receive certain personal property which, or the proceeds of which, she still has so far as the record shows.
Parenthetically, a mortgage on a part of the lands was executed by the man and his new wife so the mortgagees were made parties to this suit, but no part of the presentation is peculiar to this transaction so there is no need further to discuss it.
The chancellor restricted his consideration to the relief sought in paragraphs three and four of the bill, i.e., cancellation of the mortgage and the deeds, declaration that the appellee and her former husband held the property as "tenants in common," partition of the property by sale, and distribution of the proceeds.
After much testimony was heard the chancellor entered a final decree in which he reviewed in considerable detail the business transactions of the parties and their dealings with money which came into their hands for a period of about three years beginning, of course, when they were man and wife. He found that the appellee had sustained the material allegations of *883 the bill with "regard to the execution and delivery of * * * [the] deeds" and that she was entitled to relief, so he pronounced the deeds null and void, declared the appellee owner in fee simple of an undivided one-half interest in the property and allowed the appellant a credit for half of the amount he had paid on outstanding indebtedness. All costs were assessed against the appellant.
Taking the entire record, without interferring in the slightest degree with the construction placed by the chancellor on any conflicts of testimony, we find that there was an extensive excursion into the fiscal affairs of the parties and, to a limited extent, an exploration of their domestic difficulties, much as if the divorce case between them, with the attendant property questions, was being retried.
All the testimony except that relevant to the actual execution and delivery of the deeds seems beside the point. And for reasons we will now record the remainder of the testimony, given the weight the chancellor gave it, does not support the relief the former wife sought and obtained.
We have not dwelled on the meager allegations of the bill setting forth duress because the record shows no attack upon the pleading, but we do take into account its weakness for it was the framework for the factual structure built by the witnesses.
In the first place the woman clearly accepted the benefit of the commitment relative to property division that she signed. There is no hint that she was coerced to sign that instrument which was the basis for the deeds. We may assume that she accepted the benefits of that arrangement and retains them.
In the second place, although we have said we will not attempt to pass upon disputed testimony we must be aware of the burden the appellee assumed when she attacked the validity of the deeds. At the time she was the adverse party in a divorce suit against the grantee so no fiduciary relationship existed, Shlensky v. Shlensky, 369 Ill. 179, 15 N.E.2d 694, and she, therefore, had to prove the coercion the same as if the man to whom she was still technically bound were a stranger. Her assault even had it not been inherently feeble, could not have succeeded when based upon her own uncorroborated testimony, Herald v. Hardin, 95 Fla. 889, 116 So. 863, and we have been shown nothing to buttress her story, except the statement of a relative that she saw bruised places on appellee's leg supposed to have been the result of the "pinching" incident.
Taking the evidence as a whole the appellee's own version is wanting and the corroboration is lacking as well. As was said in the last cited case "Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." To sustain the position of the appellee we would have to conclude, aside from corroboration, that her "free agency" was destroyed when she was grabbed and pinched on the way to the signing at the court house.
As already pointed out the inquiry seems to have gone afield by developing how the parties to the original marriage had accumulated property and lost or gained in its manipulation, evidently on the theory that there should be a judicial determination of the fairness of the division when the personalty was exchanged for realty. This was a futile procedure because the divorce case then pending had, meanwhile, culminated in a final decree and property rights then and there became settled. Finston v. Finston, 160 Fla. 935, 37 So.2d 423. We announced there the rule "that a final decree * * * settles all property rights of the parties and bars any action thereafter brought by either party to determine the question of property rights." In that case the court had before it the question of property rights and held that the doctrine of res judicata controlled. Here the property rights were not introduced in the litigation but they could and should have been so the same rule applies *884 here as will be seen by an examination of our opinion in Town of Boca Raton v. Moore, 122 Fla. 350, 165 So. 279, cited as authority for the rule stated in Finston v. Finston, supra.
The present suit does not resemble a bill of review because nothing now relied upon was discovered by the appellee after the divorce case was ended. All the circumstances surrounding the execution and delivery of the deeds were as well known to appellee when they were happening and the divorce suit pended as they were when she filed the bill in the immediate case.
We are impelled to hold that the appellee's position was unsound and that her bill should be dismissed.
Reversed.
ROBERTS, C.J., and SEBRING and MATHEWS, JJ., concur.