**Frank ROSS, Appellant,**

v.

**F. E. STANLEY et al., Appellees.**

**No. 21089.**

United States Court of Appeals
Fifth Circuit.

June 1, 1965.

Rehearing Denied July 13, 1965.

Rives, Circuit Judge, dissented.

Wm. E. Haudek, New York City, Charles Jay Hardee, Jr., Tampa, Fla.,

William E. Sherman, DeLand, Fla., for appellant. Pomerantz, Levy, Haudek & Block, New York City, Hardee, Ott & Hamilton, Tampa, Fla., of counsel.

M. W. Wells, Maguire, Voorhis & Wells, Orlando, Fla., for appellees, F. E. Stanley, W. J. Bowen, Harold A. Martin, and O. Paul Herzig.

David W. Hedrick, of Giles, Hedrick & Robinson, Orlando, Fla., for appellees, Midwestern Constructors, Inc., Walco Engineering & Construction Co., Midwestern-Walco Contractors.

John Bingham, William J. Ward, Birmingham, Ala., for appellee, Harbert Construction Corp. Martin, Balch, Bingham & Hawthorne, Birmingham, Ala., of counsel.

F. L. Andrews, Andrews, Kurth, Campbell & Jones, Harry R. Jones, Jr., Houston, Tex., R. Y. Patterson, Jr., Winter Park, Fla., for defendants, Florida Gas Co. and Florida Gas Transmission Co.

J. Compton French, Daytona Beach, Fla., Erskine W. Landis, William E. Sherman, of Hull, Landis, Graham & French, DeLand, Fla., for appellee, Barnard and Burk Pipeline Engineering, Inc.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and SIMPSON, District Judge.

TUTTLE, Chief Judge:

This is an appeal from an order of the district court dismissing this shareholder's derivative action which the trial court considered to have alleged two separate claims, one for damages and the other for unjust enrichment. The court dismissed the former claim on the ground that it was barred by the Florida three-year statute of limitations [1] and it dismissed the latter claim on the ground that it was prematurely in court. Whether or not this conceptual bisection of the complaint is too finical a refinement, it can avail the appellant nothing. Regardless of the number of claims which may have been stated, we hold that the entire lawsuit is barred by the statute of limitations.

The complaint, while long and involved, because of the number of parties and the relationships of the several parties, stated the following relatively simple situation: Ross had been a stockholder of Florida Gas Company (FGC), a Florida corporation, since August 21, 1958. Florida Gas Transmission Company (Transmission), a Delaware corporation, is Florida Gas Company's wholly-owned subsidiary. The two companies and their eight directors individually were joined as defendants with three construction companies and one engineering company which had performed substantial work in connection with the construction of Transmission's gas pipeline from Texas to Florida. Plans for the construction of Transmission's pipeline began around 1952, with various of the individual and corporate defendants (and the latter's predecessors) in on the early planning. The plan contemplated construction work to be performed by the three defendant construction companies and engineering work by the defendant engineering company. There was to be no competitive bidding on the construction or engineering contracts, but they were to be executed "on terms analogous to but incorporating a cost no higher than an arm's length contract for similar work under similar circumstances." The persons in control of the defendant contracting companies, it was alleged, were and are still also in control of FGC, Transmission, and their corporate predecessors. Therefore, it was alleged that the contracts in question were subject to the Federal Power Commission's "no profits to affiliates" rule, under which the FPC excludes from a regulated company's rate base the amount of a claimed cost item which represents profits made by an "affiliate." The contracts between the gas companies and their "affiliates" were entered into in November, 1958. It was alleged that

1. Fla.Stat. § 95.11(5), F.S.A.

these contracts contemplated a substantial profit to the "affiliates" which the defendants knew or ought to have known would be disallowed by the FPC in determining the proper rate base to be used by FGC in fixing the rates for the ultimate sale of its gas. Thus, it was alleged, the defendants knowingly entered into contracts with themselves or their associates which resulted in approximately $10,000,000 of profits to the affiliated group all of which, as they knew or should have known, would be disallowed from the rate base and thus be lost as an asset to Florida Gas Company.

Since the question of accrual depends on the nature of the claim or claims forming the basis of the complaint, we copy the language of the complaint asserting the claim:

"31. Defendants and the other developers and directors of Transmission and Florida Gas breached their fiduciary duties to Transmission or Florida Gas as follows:

"(a) The manner of appointment and the membership of Transmission's negotiating committees * * were such as to foreclose arm's length negotiation of the contracts between Transmission and the contracting firms.

"(b) By reason of the absence of arm's length negotiation of such contracts and by reason of the matters alleged * * * [previously], and during the period referred to * * * [previously], each of the contracting firms was an affiliate of Transmission within the purview of the FPC's 'no profit to affiliates' rule, as defendants and the other developers and directors of Transmission and Florida Gas knew or should have known.

"(c) To the knowledge or notice of defendants and the other developers and directors of Transmission and Florida Gas, such affiliation of the contracting firms with Transmission exposed Transmission and Florida Gas to the danger that the FPC might eliminate from Transmission's rate base so much of the cost of the pipeline as reflects the profits of the contracting firms.

"(d) Defendants and the other developers and directors of Transmission and Florida Gas could and should have avoided such danger by causing Transmission to award the contracts to firms not affiliated with Transmission, or by awarding the contracts to the contracting firms at cost.

"(e) Defendants and the other developers and directors of Transmission and Florida Gas caused Transmission to award the contracts to the contracting firms pursuant to their aforementioned plan and scheme and in order to give the contracting firms an opportunity to profit, regardless of the foreseeable injury to Transmission and Florida Gas.

"(f) By reason of the acts of defendants and the other developers and directors of Transmission and Florida Gas, said companies have been injured or damaged, and may or will suffer further injury and damage, as alleged in paragraph 15, supra.

"(g) Each of the contracting firms, including its stockholders, has been unjustly enriched by so much of the payments received by it as constitutes a profit to it.

"32. (a) Defendants are jointly and severally liable to Transmission and Florida Gas for the profits realized by each of them and for the damages sustained and to be sustained by Transmission and Florida Gas.

"(b) The determination of the amounts of defendants' profits and of the damages sustained and to be sustained by Transmission and Florida Gas requires an accounting by defendants."

The complaint alleged that the staff of the Federal Power Commission had, at the time the complaint was filed, raised the issue but at that time the Commission had not made its determination as to how much, if any, of the profits of these contracting companies were comprehended within the "no profits to affiliates" rule and, therefore, how much, if any, of the alleged profits would ultimately be disallowed. The complaint alleged that this entitled the plaintiff to an accounting for such amounts as were ultimately determined by the Federal Power Commission not to be allowable as part of the "actual legitimate cost" of the transmission lines [2] under its rule prohibiting the inclusion in the cost of facilities of any "inter-company profits." [3] The complaint ended with the stock assertion that "plaintiff has no adequate remedy at law."

Each of the appellees filed a motion to dismiss the complaint under Rule 12(b)(6), of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted. Some of them also filed specific pleas of limitation by the Florida three-year statute of limitations, and of laches. The court considered that the Rule 12(b)(6) motion sufficiently raised the defense of the statute of limitations as to all appellees. The trial court expressly ruled, and the parties both concede in this Court, that the Florida three-year statute of limitations is available as a defense if it applies under the pleaded facts.

All parties seem to agree that "limitation never commences to run until the time when the plaintiff could first have maintained his action to a successful result." Brownell v. City of St. Petersburg, 5 Cir., 1942, 128 F.2d 721, 724. The appellees argue that an action for nominal damagees or for rescission of the contract could have been maintained in November, 1958. The appellant denies the possibility of a suit for nominal damages and argues that the maintainability of a rescission action is immaterial since that would be a different "claim" from the one presented here. We find no need to resolve this debate, because a careful reading of the complaint reveals that substantially the same complaint, asserting in essence the same claim, or claims, could have been filed by the appellant and maintained "to a successful result" as early as November, 1958.

In the section of his brief arguing that his complaint states a claim upon which relief could be granted, the appellant states that "it would be within the allegations of the complaint * * * to adduce proof of a conversation among all defendants, at which one of them stated, and the others agreed to, these propositions:

'We know that the contracting firms are affiliates of Transmission and FGC. We know that their contracts have not been negotiated at arm's length. We know that the payments they will receive from Transmission are likely to yield substantial profits to them. We know that these profits will not be part of the "actual legitimate cost" of Transmission's pipeline properties. We know that the FPC will disallow the profits from Transmission's rate base. We know that this will cause great harm to Transmission and FGC; but we do not care about this injury, because we want the contracting firms to make a profit, according to our original plan and scheme.'"

2. Sec. 6 of the Natural Gas Act, 15 U.S. C.A. § 717e provides that "[t]he Commission may investigate and ascertain the actual legitimate cost of the property of every natural-gas company, the depreciation therein, and, when found necessary for rate-making purposes, other facts which bear on the determination of such cost or depreciation and the fair value of such property."

3. For an application of the Commission's rule see St. Croix Falls, Minnesota Improvement Company, et al., Proceedings re Reclassification of Electric Plant Accounts of Public Utilities, 3 F.P.C. 13.

From this, appellant concludes that "a constructively fraudulent breach by defendants of their fiduciary duties" is alleged. Alternatively, the appellant construes his complaint as charging that the appellees "acted negligently in awarding the construction and engineering contracts to the contracting firms and thereby caused a loss to Transmission and to FGC."

If these statements accurately describe the gravamen of the appellant's complaint, there is no reason why such a complaint could not have been brought in November, 1958, when the contracts were executed, or within three years thereafter. There is no charge of any concealment on the part of the appellees, and it is clear from the record that no such charge would be justified. Only if some new transaction or occurrence, cited in the complaint and material to the appellant's claim for relief, took place within three years before the filing of the complaint, can it be said that the present action is different from one which first could have been maintained to a successful result in November, 1958. The appellant seeks to supply this more recent element in his brief and oral argument and, somewhat incidentally, in his complaint by making action by the FPC "essential" to his prayer for relief. The part of the appellant's complaint which could not have been included in a complaint filed in November, 1958, is paragraph 15. This alleges that the FPC's staff has recommended elimination of the affiliates' profits from Transmission's rate base and that, on June 8, 1962, the FPC approved a stipulation between its staff and the gas companies which "fixed the rates chargeable by Transmission on the basis of eliminating from its rate base those cost items which the staff of the FPC contends should be eliminated * * * without prejudice to the ultimate cost determination to be made by the FPC. * * *" Because of these allegations, the appellant contends that his claim for damages could not have accrued prior to June 8, 1962.

But the recommendations of the FPC's staff and the approval of the stipulated temporary rate base add nothing of substance to the appellant's basic claim for relief. Even in paragraph 15, the appellant finds it necessary to allege:

"If the FPC ultimately eliminates from Transmission's rate base all or part of the cost items reflecting the profits of the contracting firms, Transmission's pipeline investment will be lost to the extent of the cost items so eliminated from its rate base, to Transmission's great injury and damage."

This same allegation of impending and foreseeable, future injuries stemming from the breach of fiduciary duty consummated in November, 1958, goes to the heart of appellant's claim and, like substantially all the rest of the complaint, could have formed part of an action commenced more than three years before the filing of the present suit.

The circumstances alleged to have existed at the time the contracts were executed in November, 1958, unquestionably would have supported a bill in equity for an accounting based on a breach of the fiduciary relationship resulting in injury, the damages from which could not be computed until a later date. Such an action for accounting from allegedly faithless fiduciaries is fully recognized in Florida. R. O. Holton & Co. v. Hull, 1939, 140 Fla. 687, 192 So. 229. In Royal Indemnity Co. v. Knott, Fla.1931, 136 So. 474, 478, the Supreme Court of Florida said "[a]nd it may be said generally that whenever there is a fiduciary relation such as that of trustee, agent, executor, etc., the right to an accounting in equity is undoubted. The right in such cases is based upon the substantive equity of trusts which jurisdiction equity always had. 1 Ency.Pl. & Pr. 96." In point of fact, this is precisely the suit that the plaintiff has brought in this case. He stated a case against fiduciaries for an equitable accounting, alleging, presumably because the amount of damages could not be determined until

further action by the Federal Power Commission, that there was no adequate remedy at law.

It seems clear upon the statement of the claim, and upon a recognition of the fact that the equitable cause of action is recognized in Florida to meet this precise type of situation, that the plaintiff was fully entitled in November 1958 to bring his bill in equity in the state court, or an action in the federal court to vindicate a State equitable right, seeking exactly the relief that he sought when his suit was filed in 1963. All the breaches of fiduciary duty alleged in the complaint occurred not later than November, 1958. These breaches of fiduciary duty gave rise to the right in the plaintiff to have an accounting made of the damages that would accrue therefrom. The fact that the amount of the damages could not be ascertained until a later date was the very circumstance that required the filing of proceedings of an equitable nature. When the contracts were executed, the claim had fully ripened so as to be the basis of an action. Such action not having been brought for more than three years after it accrued, it was barred by the three-year statute of limitations as determined by the trial court.

Nothing of substance is added by the appellant's contention that he has stated a claim sounding in unjust enrichment, which, he argues, could not accrue until the defendants first received returnable profits. No claim for restitution by fiduciaries in the classical sense, founded upon conflicts of interest, is alleged in this complaint. The complaint views the defendants' profits as "unjust," and therefore returnable to the corporation, only if they are "profits to affiliates" under the FPC rule. The true essence of the appellant's grievance if these profits are, as alleged, subject to the FPC rule, is their exclusion from Transmission's rate base with the consequent damage to the corporation. The profit-making of

the defendants can not be separated from the damages to the corporation; they are absolutely equivalent.[4] There is no difference, quantitative or qualitative, between the delay in the advent of damages following the execution of the contracts and the delay in the advent of defendants' profits. If what appellant calls his "damage claim" accrued in November 1958, his "restitution claim" accrued at the same time. That was when the appellant "could first have maintained his action," as spelled out in his present complaint, "to a successful result." Brownell v. City of St. Petersburg, supra. Looking to "the aggregate of operative facts which give rise to a right enforceable in the courts," Original Ballet Russe, Ltd. v. Ballet Theatre, Inc., 2 Cir. 1943, 133 F.2d 187, 189, we find that the operative facts alleged in this complaint, giving rise to an action for an accounting based upon breach of fiduciary duty or unjust enrichment or both, were in existence and would have supported an action for an accounting in November, 1958. The fact that profits, and therefore damages, occurred at various times after that date is as insignificant in fixing the time when the appellant's essential complaint first could have been filed as is the fact that FPC action was not initiated until 1962.

The judgment of the trial court to the extent that it dismissed the claim as being barred by the statute of limitations is affirmed. The judgment of the trial court is remanded to permit the remainder of the judgment to be amended in a manner not inconsistent with this opinion.

SIMPSON, District Judge (concurring):

My agreement with the opinion prepared by Chief Judge TUTTLE for the Court is complete and without reservation. Ordinarily, Judge RIVES' dissenting opinion—with which, despite its characteristic force and persuasiveness, I dis-

---

4. If A converts B's property to his own use, there is both damage to B and unjust enrichment to A, but so far as the statute of limitations is concerned, nothing can be made of this separation.

agree on nearly all questions raised— would call for no amplification by me of the views I share with Judge TUTTLE. Perhaps here the majority view is so clear as to be better left without attempted embellishment. But, since Judge RIVES wrote his dissent after and with a weather eye upon that of Judge TUTTLE, and not, as sometimes occurs, after a conference in which all views are exchanged and argued to decision, I feel justified in pre-empting for the majority the trial lawyer's cherished right to "open and close".

First, I would emphasize that the Complaint here sets forth only one claimed breach of legal duty; only one "claim" or "cause of action", not two; only one basis for recovery. The only duality I can discover is in theories of recovery and computation of damages.

It is sophistry to assert the existence of two claims, one for "breach of trust" and a separate claim for "unjust enrichment", giving rise to an equitable right to an accounting.[1]

As developed on pages 10–12 of Judge TUTTLE's opinion and Footnote 4 thereof, the breach of trust, if it occurred, was simply the cause of the claimed unjust enrichment, not a separate and divisible "claim upon which relief may be granted". The attempted division into two claims, or two "causes of action" will not withstand critical analysis.

The district judge had before him Rule 12(b) (6) [2] motions from all defendants addressed to the sufficiency of the Complaint. He concluded, rightly, I think, (and not, as I read Judge RIVES' opinion, questioned by him) that the Florida three year Statute of Limitations [3] was applicable, and was proper for the Court to consider in disposing of Rule 12(b) (6) motions, provided the facts pleaded by the Complaint were sufficiently complete to demonstrate the limitation statute's application. He applied the limitation statute to what he, and now Judge RIVES, mistakenly, we think, (supra and pages 10–12 of the majority opinion) construed as the first (breach of trust) of two separate and distinct claims or causes of action.

Our holding, in summary, is: that only one claim, not two, existed; that all, not part of it, was time-barred under the Florida Statute when suit was brought; and that the district court's attempted dichotomy was impermissible, as without legal or factual basis.

1. Old Florida and Alabama common law pleaders would question the complaint's averment of "no adequate remedy at law" having in mind the catch-all common count in an action of *assumpsit* for "money had and received", which, as the old cases demonstrate, could be based upon concepts of an equitable nature, or arising from equitable considerations. "Money had and received" was held to be broad enough to cover practically any situation developed at trial of the defendant being in possession of money or property rightfully belonging to the plaintiff, and for which money damages was an adequate remedy. This would include such conecpts, *inter alia,* as "breach of trust" and typically, "unjust enrichment". Moss v. Condict, 154 Fla. 153, 16 So.2d 921; Sears v. Gulf Refining Co., 113 Fla. 714, 143 So. 759, 152 So. 1; Gordon v. Camp, 2 Fla. 422. Only if he needed discovery and examination of the defendants' records to establish damages, or if money damages would not be adequate relief, (and hence in either

event "no adequate remedy at law") would the competent Florida pleader of my salad days have foregone a law action of assumpsit, with attendant jury trial of factual issues, for resort to bill in equity for accounting, usually tried twice, once before a Special Master in Chancery, and again before the Chancellor upon exceptions to the Master's Report.

It is equally clear from old Florida cases that prosecution of either remedy to judgment gave rise to a plea in bar (Law) or complete equitable defense (Chancery) of former judgment or *res judicata* in the event that the parallel remedy was later asserted on the other side of the Court. Cragin, et al. v. Ocean & Lake Realty Co., 101 Fla. 1324, 135 So. 795 (dictum); See: Town of Boca Raton v. Moore, 122 Fla. 350, 165 So. 279; Kent, et al. v. Sutker, 40 So.2d 145.

2. Federal Rules of Civil Procedure.

3. Fla.Stat. Sec. 95.11(5), F.S.A.

The *judgment* below was brought here on appeal, *not just part of it,* as Judge RIVES argues, and the majority opinion simply directs that that judgment, now under our jurisdiction on appeal, be modified below to meet these views. Upon remand the suit will stand dismissed with prejudice, not with one portion of an indivisible whole dismissed with prejudice, and the remainder thereof dismissed without prejudice, as the district judge incorrectly attempted.[4]

In the next place, I have no quarrel with the legal and equitable principles discussed by Judge RIVES at pages 653 and 654 of the dissent, with respect to the duties and liabilities of fiduciaries and those in privity with them toward a legally wronged or defrauded beneficiary. I accept also, without giving it the significance assigned to it by Judge RIVES, the statement that there remains a *locus penitentiae,* that the fiduciary and his privies owe a duty of restitution to the beneficiary.

Of course this is so, otherwise there would never accrue a right of action, the breach of the legal duty to restore gains acquired through breach of trust.

But does this mean that no right of action accrues (and hence no running of time under the limitation statute) until some indefinite time in the future when both an opportunity to restore, and a failure to restore have taken place, as Judge RIVES appears to argue? I do not believe so, but rather that once the beneficiary has knowledge, actual or constructive, of the wrong to him and his purse, actual or potential, great or slight,

the inexorable and inescapable time-running process of the limitation statute takes hold. This occurred, according to the Complaint in early November, 1958, more than three years before suit was filed.

Finally, *if* we of the majority have misunderstood and misconceived the nature and legal consequences of the matters set forth in the Complaint, and the appellant Ross does have two separate and severable claims, and *if* the dismissal of one claim without prejudice by the district judge ought of right to stand undisturbed, (as unappealed by the defendants and now final) it should be kept in mind that the *dismissal* of this claim *is* permitted to stand. All that is removed is the "without prejudice" label appended to that dismissal by the district court.

If this provision of the order appealed from were permitted to stand undisturbed, and if our views as to the accrual date (November, 1958) of all claims, or partial claims, or parts of claim, are correct,[5] and we believe they are, and suit was later brought by Ross, the defendants could raise the Florida 3-year limitation statute (Fla.Stat. Sec. 95.11(5), F.S.A. supra) as a bar to recovery. The *bar would be complete.* What and all that is accomplished by the present majority direction to the lower court is to afford the defendants (in a later suit) an additional plea in bar, *former judgment.*

Two bars accomplish no more than one, so that the jurisdictional argument is practically no more than an interesting intellectual exercise.[6]

---

4. As a Florida country boy, I often heard rumors of, but never saw, the mysterious "joint snake", commonly reputed to remain viable as two or more separate and complete snakes if chopped into two or more parts. I am even yet unable to assert with confidence (or competence) that such snakes do not exist. I can truthfully say that one has never come under my direct notice. Careful examination of the Complaint here raises no need for updating or revision of this statement. I still haven't seen a "joint snake".

5. Judge RIVES' opinion does not follow the district court's conclusion that the two asserted claims accrued and will accrue at different times, i. e., one (breach of trust) now time-barred, one (unjust enrichment) now prematurely asserted. He (Judge RIVES) argues only that both will accrue in the future, but presumably at the same time, "the conclusion of the Federal Power Commission's decision and its review by the courts". (Conclusion, page 21, dissent.)

6. If we accept Gertrude Stein's assertion that "a rose is a rose is a rose" it seems

With deference to and high respect for the views of Judge RIVES, I am constrained, after reconsideration of the majority opinion in the light of Judge RIVES' opinion, to concur in Judge TUTTLE's opinion for the reasons lucidly set out by him and further upon the basis of the additional or amplified reasons here attempted to be developed.

RIVES, Circuit Judge (dissenting):

With deference, I dissent.

The district court held that the claim for damages resulting from a breach of fiduciary duty is barred by the statute of limitations and that the claim for unjust enrichment is premature. Accordingly it dismissed the action but expressly made the dismissal "without prejudice to the right of the plaintiff to bring a further action for relief for restitution and unjust enrichment at such time as an order of the Federal Power Commission in the pending rate base proceeding becomes final."

The plaintiff alone filed a notice of appeal. None of the defendants appealed. Now this Court holds that both claims were barred by the statute of limitations and that the entire action should have been dismissed with prejudice.

On their claimed defense of the statute of limitations addressed to the claim of unjust enrichment, the district court ruled against the defendants. The defendants having failed to appeal, I submit that they can no more rely on the statute of limitations as to the claim of unjust enrichment than if they had failed to plead that defense in the first instance. To the extent that the judgment was adverse to the defendants it became final without appeal, and this Court is without jurisdiction to enlarge the rights of the defendants.[1]

Laying aside the jurisdictional question, I submit that neither claim is barred by the statute of limitations. Florida Gas Company (F.G.C.) and Florida Gas Transmission Company (Transmission) held no claim upon which relief could be granted as early as November 1958 when the contracts were executed. Those contracts did no more than expose F.G.C. and Transmission to the risk of injury conditioned on the occurrence of two subsequent events: (1) The receipt of profits by the contracting firms; and (2) the elimination by the Federal Power Commission of those profits from Transmission's rate base. Unless and until profits accrued to the contracting firms, the defendants' breach of duty to the plaintiff was not complete for only profits could be eliminated from the rate base. The contracts contemplated reasonable profits to the contracting firms, but, as of the dates of the contracts, the actual receipt of the hoped for profits was speculative and uncertain. Assuming, however, that to be untrue and that the contemplated profits were so large as to make their receipt virtually a certainty, there remained a locus poenitentiae.

A fiduciary and third persons colluding with a fiduciary who obtain a benefit from a breach of the fiduciary's duty are under a duty of restitution to the beneficiary.[2] It could not be presumed in

---

to me equally correct in this context to proclaim that "a bar is a bar is a bar".

1. The William Bagaley, 1866, 5 Wall. 377, 72 U.S. 377, 412, 18 L.Ed. 583; United States v. American Ry. Express Co., 1924, 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087; Morley Co. v. Maryland Casualty Co., 1927, 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593; Helvering v. Pfeiffer, 1937, 302 U.S. 247, 251, 58 S.Ct. 159, 82 L.Ed. 231; Le Tulle v. Scofield, 1940, 308 U.S. 415, 422, 60 S.Ct. 313, 84 L.Ed. 355; Southern Bell Telephone Co. v. Southern Precision Pattern Works, 5

Cir. 1958, 251 F.2d 537, 540; Abel v. Brayton Flying Service, 5 Cir. 1957, 248 F.2d 713, 717; Schildhaus v. Moe, 2 Cir. 1963, 319 F.2d 587, 588; Zellinger v. Uvalde Rock Asphalt Co., 10 Cir. 1963, 316 F.2d 47, 54; 7 Moore Federal Practice ¶72.05 (2d ed. 1953).

2. Jackson v. Smith, 1921, 254 U.S. 586, 588, 589, 41 S.Ct. 200, 65 L.Ed. 418; Flight Equipment & Engineering Corp. v. Shelton, Fla.1958, 103 So.2d 615, 625; A.L.I. Restatement, Restitution §§ 138, 190. Indeed, a broader principle not re-

advance that the defendants would breach that duty so as to make the claims complete as of the dates of the contracts.

Further, profits, even when received and retained by the contracting firms, did not give rise to a claim on which relief could be granted until the Federal Power Commission actually began to eliminate those profits from Transmission's rate base. Until that event it could not be known with any degree of certainty that the receipt of reasonable profits by the contracting firms was unjust or wrongful, or that the defendants had committed any legal injury to F.G.C. and Transmission.

The situation is analogous to Town of Miami Springs v. Lawrence, Fla.1958, 102 So.2d 143, where the action was based on the fact that the town raised the level of a street and failed to provide drainage for the plaintiff's land. In denying the defense of limitations, the Florida Supreme Court held:

> " * * * the statute does not begin to run until actual harm is inflicted to the plaintiff's land, regardless of the installation date of the construction or obstruction causing the overflow. See 56 Am.Jur., Waters, § 444; Baker v. Fort Worth, 1948, 146 Tex. 600, 210 S.W.2d 564, 5 A.L.R.2d 297; Henderson v. Talbott, 1954, 175 Kan. 615, 266 P.2d 273; annotation in 5 A.L.R.2d pp. 302 et seq."

See also Duchaine v. Grosco Realty Co., Fla.App.1960, 121 So.2d 679.

With deference, I submit that neither claim is barred by the statue of limitations. I submit, further, that neither claim should be dismissed as premature, but rather that a stay should be directed pending the conclusion of the Federal Power Commission's decision and its review by the courts.[3]

For the reasons stated, I respectfully dissent.

Rehearing denied; RIVES, J., dissenting.

---

stricted to fiduciaries and those colluding with them might be applicable, to the effect that "A person is not permitted to profit by his own wrong at the expense of another." A.L.I. Restatement, Restitution § 3, §§ 128–137; see also Prosser on Torts, § 82, p. 486 (2d ed. 1955).

3. See Best v. Humboldt Placer Mining Co., 1963, 371 U.S. 334, 338–339, 83 S.Ct. 379, 9 L.Ed.2d 350; Hewitt-Robins v. Eastern Freight-Ways, 1962, 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142; Thompson v. Texas Mexican R. Co., 1946, 328 U.S. 134, 151, 66 S.Ct. 937, 90 L.Ed. 1132; General Amer. Tank Car Corp. v. El Dorado Term. Co., 1940, 308 U.S. 422, 433, 60 S.Ct. 85, 84 L.Ed. 449; United States v. Morgan, 1939, 307 U.S. 183, 198, 59 S.Ct. 795, 83 S.Ct. 1211; Mitchell Coal & C. Co. v. Pennsylvania R. Co., 1913, 230 U.S. 247, 266–7, 33 S.Ct. 916, 57 L.Ed. 1472; McCleneghan v. Union Stock Yards Co., 8 Cir. 1962, 298 F.2d 659, 670.