636 So.2d 831 (1994)
Thomas L. ROBINSON and Laura A. Robinson, his wife, Appellants,
v.
Domenic ALBANESE, Appellee.
No. 92-2832.
District Court of Appeal of Florida, Fifth District.
May 6, 1994.
*832 Peter B. Heebner of Heebner, Baggett, Prechtl and Ellis, Daytona Beach, for appellants.
David A. Vukelja, of David A. Vukelja, P.A., Ormond Beach, for appellee.
W. SHARP, Judge.
Thomas and Laura Robinson appeal from a $34,270.00 final judgment against them in favor of Albanese, an individual who contracted with them to do remodeling work on their oceanfront house in Ormond Beach, Florida. The judgment included a small setoff of $4,430.00 for the Robinsons on their counterclaim for breach of contract and defective workmanship. After conducting a non-jury trial, the trial judge directed a verdict for the Robinsons on Count I (foreclosure of a mechanic's lien) because Albanese is not a licensed contractor and it found for Albanese on both Count II (breach of contract) and Count III (quantum meruit) for the same amount of damages ($38,700.00) less $4,430.00. We reverse because there is insufficient evidence to support the judgment.
The testimony was not in dispute on many key points. In November of 1989, the Robinsons entered into a partially oral and partially written (bid request) contract to have Albanese supervise various aspects of the remodeling job on their newly-purchased home. They knew he was not a licensed contractor, but he assured them he would "associate" a licensed general contractor to "pull the permits" and oversee the work generally.
The parties went over a list of jobs for which Albanese was responsible and priced each out. Albanese agreed to do them for a total of $26,800.00, which included all costs of materials, supplies, and labor, as well as his supervision. The interior of the 1500 squarefoot *833 house was essentially gutted, walls were moved, windows were moved and doors closed up, new cabinets and closets were built, new appliances were installed, and extensive tile work was done throughout the house. The Robinsons purchased the windows, doors, fixtures and major appliances directly through third parties except for some plumbing and electrical fixtures which they paid Albanese to buy for the job.
Albanese promised the job would be sufficiently complete by Christmas so they could move in. Unfortunately, Albanese was unable to keep his promise. The remodeling job ran into delays, and Albanese spent all of the Robinson's $26,800.00 long before the job was near completion. By that time, the Robinsons had asked Albanese to expand his tasks, such as installing the Anderson windows they purchased from Dunn Brothers.
On January 4, the Robinsons and Albanese conferenced the status of the job. The Robinsons testified they all agreed that the total of the extra work Albanese had been asked to do beyond the $26,800 brought the total owed him to $37,000.00. Albanese testified he never agreed to that total, but he accepted payment of that sum, and "refunded" them $1,551.00 as an overpayment.
After January 4, Albanese lost interest in the Robinsons' job. He moved the tools he purchased for the job (at their expense) to another job he had underway, and also told his laborers to leave the Robinsons' job. Albanese had a large amount of ceramic tile he purchased for the Robinsons' job moved to his own home. He also admitted he bought meals on the job for himself and laborers; paid two different general contractors "fees" totaling $2,656.00 and $2,700.00 and made other minor unauthorized expenditures of the Robinsons' funds. He was "fired" from the Robinsons' job on January 14 after the Robinsons realized he had abandoned their work, and that he had not paid various suppliers and subcontractors they had paid Albanese to handle.
Subsequently, Albanese filed a claim of lien for $47,000.00. He testified much of his claim was for his own personal labor ($15,900.00), although he admitted he never told the Robinsons he intended to charge anything for his own time on the job. That was clearly understood by the parties as having been included in the original price of $26,800.00 for the original remodeling task. As other tasks were added later, Albanese gave the Robinsons set prices for each job, which did not include his own time and labor. However, he did not inform the Robinsons of this fact.
Two expert witnesses testified at the trial. Weinberg, a general contractor, testified for Albanese. He visited the Robinsons' house some months after they had brought in other laborers and subcontractors and paid $150,000 to complete the remodelling. He made a list of the work Albanese was supposed to have done on the job. He estimated he would have bid Albanese's job at $76,534.00, including overhead and profit. His costs would have been $49,780.00. He thought the house looked "presentable" and "nice."
Alexander testified for the Robinsons. He was accepted as an "expert witness." He is a licensed general contractor, a certified building inspector, and is knowledgeable about the Southern Building Code and the standards for local construction and the Volusia County Building Code. He inspected the Robinsons' home in June of 1990, and found a gross number of building and code defects, extremely poor workmanship throughout, and even then, substantial incompletion of the project.[1] None of this testimony was *834 rebutted. He concluded that it would take $5,500.00 to complete Albanese's unfinished jobs and $23,663.00 to redo and repair the defective work and bring necessary items up to Code.
Albanese's attorney pointed out that Alexander had not seen the project right after Albanese had left it, and perhaps other workmen had been responsible for the defective work he saw in June of 1990. However, the Robinsons made a videotape of their house in January and February of 1990, right after Albanese left the job. The tape vividly demonstrates all the defects and problems discussed by Alexander and attributes them all to Albanese or laborers under his supervision and direction.
At the end of the trial, Albanese argued he was entitled to recover under a theory of contract as well as quantum meruit, a total of $76,534.00 (Weinberg's estimated bid price for the completed job), less $37,800.00 already paid him by the Robinsons. In essence, that is what the trial judge awarded him, less $4,430.00 for the cost for the Robinsons to complete the job. The trial judge also declared he totally rejected Alexander's testimony and ruled for Albanese, based on the videotape and his testimony.
In a case such as this where damages are sought for a contract which has not been fully performed, the contractor can recover either in quantum meruit (reasonable value of the labor performed and market value of materials)[2]or in contract (lost profit, plus the reasonable cost of labor and material expended in partial performance). Marshall Construction, Ltd. v. Coastal Sheet Metal & Roofing, Inc., 569 So.2d 845 (Fla. 1st DCA 1990). With regard to recovery on the contract theory in this case, Albanese failed to establish there was any profit in the Robinsons' job for him. That was no doubt the reason he abandoned the project early in January of 1990.
Further, in order to recover for breach of contract, a party must also establish substantial performance of his obligation under the contract. The Robinsons denied Albanese performed his obligations under the contract. Albanese admitted he left the job unfinished, misappropriated funds and materials, and failed to pay suppliers he had been paid to pay. There is no evidence in the record which supports substantial completion of any part of this contract.
With regard to quantum meruit, there is no evidence in this record as to the reasonable market value of the labor, service and materials furnished by Albanese when he left the job. Weinberg's testimony is insufficient to establish that sum. He merely testified he would have bid $76,534.00 to do Albanese's job, but that figure also included his profit and overhead. Also, he had no basis to testify (nor did he in fact do so), that Albanese's labor, service and materials improved the Robinsons' home's value by $76,534.00 since he had no idea how much or how little of the job Albanese actually had done, when he left the project.
In addition, it is apparent that the trial judge did not consider the Robinsons' costs to cure (as opposed to complete) Albanese's defective work as a setoff to his quantum meruit recovery. See also Searcy, Denney, Scarola, Barnhart & Shipley v. Scheller, 629 So.2d 947 (Fla. 4th DCA 1993). After the plaintiff makes out a prima facie case in quantum meruit, the next issue is whether the services or work performed were of the value alleged by the plaintiff. Dean v. Blank, 267 So.2d 670 (Fla. 4th DCA 1972). Considerations in defense of such claim also include whether the plaintiff timely performed *835 the work. The failure to do so would lessen the value of these services. Dean. Moreover, if the plaintiff either deliberately or without design overperforms, he is not entitled to compensation for the overperformance. Dean.
In this case there was no evidence or testimony that Albanese's work was done in an acceptable, workmanlike manner, and that it met local building codes and standards. Neither Albanese nor Weinberg so testified. To the contrary, the Robinsons' testified Albanese left their home in a complete mess and a scene of near disaster. Their home video fully supports their view.
We conclude, after reading the record of the trial closely and viewing the videotape and other pictures in evidence, that there is insufficient evidence to support the judgment and that it must be reversed in the interest of justice. See Tibbs v. State, 397 So.2d 1120 (Fla. 1981); Clements v. Plummer, 250 So.2d 287 (Fla. 1st DCA 1971).
REVERSED and REMANDED
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] For example, Alexander testified utility lines were uncovered, the exterior was not finished, openings were blocked and not finished, the front steps were unfinished, cabinets were unfinished, closets were improperly installed and electrical work undone. The ceramic tile (the primary feature of the house) was of irregular height, the width of the grout joints varied unacceptably, organic and inorganic matter had been ground into the grout and had discolored it, grout was unseated, tile was cut irregularly, grout was splayed onto the edges of other tiles. The tile work on the island counter top in the kitchen was one of the worst jobs he had ever seen. The stove top had been set in the tile grout, which prevented any expansion and voided the warranty. The stove top cannot be removed for servicing. The marble fireplace hearth was unfinished and was built contrary to the building code, which requires a sixteen inch ledge. The window openings were not properly supported and installed pursuant to Code. The vertical stress will cause the glass doors to become inoperable. The masonry work on the exterior was contrary to Code and of inferior quality. There is no water barrier and rain will come into the house through the walls. The drywall and tape on the ceiling were improperly installed. It is irregular in width and height and the walls were out of line.
[2] Moore v. Spanish River Land Co., 118 Fla. 549, 159 So. 673 (1935), affirmed, 122 Fla. 350, 165 So. 279 (1936); Digital Systems of Florida v. Committe, 472 So.2d 533 (Fla. 1st DCA 1985), rev. denied, 482 So.2d 348 (Fla. 1986); Solutec Corp. v. Young & Lawrence Associates, Inc., 243 So.2d 605 (Fla. 4th DCA 1971); Fred Howland, Inc. v. Hollywood Tile & Terrazzo Co., 207 So.2d 700 (Fla. 4th DCA), cert. denied, 214 So.2d 621 (Fla. 1968).