MERRILL S. SLOAN & another *vs.* RONALD P. BURROWS.

Suffolk.    March 3, 1970. — May 4, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Release.  Contract,* Consideration.  *Accord and Satisfaction.*

Where it appeared that some months after execution of a stock purchase
agreement, the seller paid to the buyer an amount, undisputed after
computation of several small adjustments and claims, owed under the
agreement, it was held that the payment was not consideration for a
purported general release of all claims under the agreement set forth
in an unsealed instrument executed by the parties providing that the
payment should "constitute a settlement in full . . . and a final dis-
charge of all claims . . . by virtue of the sale" of the stock, and the
buyer was not precluded by such instrument from prosecuting a claim
under the agreement against the seller.  [414–415]

Where it appeared in a contract action that an agreement for the sale of
all the stock of a company contained warranties by the seller that
"the company then had no liabilities" not reflected on an attached
balance sheet, that all income taxes had been paid, and that he would
indemnify the buyer against any tax liability subsequently assessed
against the company, and the agreement established an escrow fund
of a portion of the purchase price as security for payment to the buyer
of the amount of "liabilities of the Company (including tax liabilities)
neither reflected on nor provided for" in the balance sheet, of which
the buyer should notify the seller prior to a specified date, it was held
that payment of a sum from the escrow fund to the buyer of an amount
owed to him under the agreement did not give rise to an accord and
satisfaction of a subsequent claim of the buyer based on a tax liability
of the company which first came to the notice of the parties after the
specified date, and that the buyer was entitled to recover on his claim
under the indemnity provision.  [415–416]

CONTRACT.  Writ in the Superior Court dated March 4,
1963.

The action was heard by *Brogna,* J.

*Charles H. Riley, Jr.,* for the defendant.

*Julius Thannhauser* for the plaintiffs.

SPALDING, J.    This is an action of contract to recover
under an indemnity clause in a stock purchase agreement.
A judge sitting without a jury made findings of fact and

found for each plaintiff in the same amount. The case comes here on the defendant's exceptions to certain rulings.

Findings of the judge include the following. On or about December 30, 1959, the plaintiff Sloan entered into an agreement to purchase all the outstanding stock in Mattson & Rowse, Inc. (Mattson) from its owner Burrows, the defendant. Sloan had been employed by Mattson since 1950, first as a truck driver and, from 1957, as treasurer. In 1958 Burrows had purchased all the stock of Mattson. In the stock purchase agreement between Burrows and Sloan the seller covenanted and warranted "[t]hat the company then had no liabilities of any nature whether accrued, absolute or contingent," that were not reflected on an attached balance sheet. He also warranted that all income taxes had been paid. Paragraph 5 (b) of the agreement provided that the seller would indemnify the buyer and the company against any tax liability which later became due.[1] Three thousand dollars of the purchase price was placed in an escrow account in the names of the buyer and seller to be disposed of in accordance with a procedure set out in paragraph 7 which was dependent on the seller's receipt by March 31, 1960, of written notice of liabilities (including tax liabilities) of Mattson.

In January of 1960, the Internal Revenue Service took possession of Mattson's books for the purposes of an audit. Sloan, both individually and as officer of the company, had no knowledge until sometime in 1962 that a serious tax problem existed between himself and Mattson, and the Internal Revenue Service. On or about May 12, 1960, Sloan and Burrows met for the disposition of the $3,000 escrow fund. At this meeting $327.16 from the fund was paid to Mattson, the remainder of the fund going to Burrows.

---

[1] Paragraph 5 (b) is as follows: "That he will indemnify the Buyer and the Company against, and save each of them harmless from, all loss, damages, claims, liabilities, costs and expenses, including reasonable attorneys' fees, suffered by them or either of them arising out of or resulting from (i) any Federal, State or municipal excise, income, sales or other taxes of the same or different nature which may now be due or which may hereafter be claimed, imposed, levied or assessed against the company . . . ."

No attorneys being present, Burrows drafted the following: "Agreed this 12th day of May 1960 by & between R. Burrows & M. Sloan that the payment of $327.16/100 by Burrows to Sloan shall constitute a settlement in full between the two parties, and a final discharge of all claims, demands, actions or suits at law by virtue of the sale of Mattson & Rowse Inc. on Dec. 30, 1959." This document, which was not under seal, was signed by Burrows and Sloan individually.

In September, 1962, an attorney representing Sloan and Mattson was notified by the Internal Revenue Service that a tax problem existed. The Government claimed additional income taxes of approximately $35,000 from Mattson for the years 1957, 1958 and 1959 because of Mattson's failure to report as income volume rebates, or discounts, credited to its account by one of its suppliers. After considerable negotiation, which necessitated the hiring of a special tax counsel, the Internal Revenue Service agreed on May 5, 1967, to settle the claim for $7,473.05.

The judge found for each plaintiff in the sum of $10,823.54. This sum includes the amount of the tax settlement ($7,473.05) together with interest on that amount from May 5, 1967, to February 13, 1968 (the date of the finding), plus the sum of $3,000 in attorneys' fees which the judge found had been reasonably incurred by the plaintiffs in settling the tax liability. It was stipulated by the plaintiffs that there shall be recovery only in one amount for one of the plaintiffs. The points hereinafter discussed were duly raised by the defendant's exceptions to various rulings of the judge.

1. The defendant argues that the document signed by him and Sloan on May 12, 1960, upon disposition of the escrow fund constituted a general release, supported by consideration, of all claims against Burrows. The judge rejected this contention, finding that the payment of $327.16 was already owed under the terms of the agreement, and thus could not be consideration for the purported release.

We find no reason to disturb this conclusion. For a general release to be given effect, even against claims

for which both parties were ignorant at the time, it must be supported by consideration. The question, therefore, is whether the payment of $327.16 by Burrows to Sloan[2] constituted consideration for Sloan's release of all claims "by virtue of the sale of Mattson & Rowse Inc. on Dec. 30, 1959." It is well settled that payment in settlement of an unliquidated and disputed claim will support a promise releasing the payor from further liability on that claim. *Tuttle* v. *Tuttle*, 12 Met. 551. *Donohue* v. *Woodbury*, 6 Cush. 148. See *Chamberlain* v. *Barrows*, 282 Mass. 295, 298–299. That situation, however, does not appear to exist here. The $327.16 was already owing under the terms of the stock purchase agreement. It was arrived at after computing several small adjustments and claims. Contrary to the defendant's assertion, there was no evidence that a genuine dispute existed over the amount owed Sloan, which the $327.16 was intended to settle. On the evidence the judge could have found — as he evidently did — that the adjustment was a mere matter of computation. Since the duty to pay this amount already existed under the agreement, the rule that performance of an existing legal duty or contractual obligation is not sufficient consideration for a new promise by the obligee applies. *Swartz* v. *Lieberman*, 323 Mass. 109, 112. The court's ruling on this issue was correct.

2. The defendant further argues that the payment of $327.16 from the escrow fund to Sloan gave rise to a completed accord and satisfaction that barred all subsequent claims by Sloan arising from the sale of Mattson. He bases this argument on the theory that in setting up the escrow fund, the parties were creating an executory accord, and that payment of all or any part of this fund would constitute a complete accord and satisfaction of all claims against Burrows. The plain language of paragraphs 3 (b) and 7

---

[2] At the meeting between Burrows and Sloan on May 12, 1960, a check for $327.16 was written out to Mattson. Since the money was clearly owed to Sloan, we treat this payment as if made to Sloan, or made to Mattson at Sloan's request.

creating the escrow arrangement does not support this contention. Paragraph 7 contains provisions for disposing of the $3,000 escrow fund set up by paragraph 3 (b). Paragraph 7 addresses itself only to the narrow case of "liabilities of the Company (including tax liabilities) neither reflected on nor provided for" in the attached balance sheet which existed on September 30, 1959, and of which written notice has been given to the seller by the buyer prior to March 31, 1960. In such a case paragraph 7 provides that either by agreement of the buyer or arbitration, the amount of those liabilities shall be paid the buyer from the escrow fund. The remainder of the fund is then to be paid to the seller, which is the case if no written notice has been received by March 31, 1960. There is thus no language in 3 (b) or 7 suggesting that all liabilities were thereby settled by a payment from the fund or that the seller's liability was limited by the amount of the fund. Paragraph 7 merely creates a procedure for disposing of the escrow fund created as security for claims of which the buyer would have notice by that date. These provisions do not mention liabilities which came to the notice of the parties after that date, and to which the warranty and covenant of the seller apply. The court's conclusion that there was not an accord and satisfaction of the tax liability because such was not in the contemplation of either party was correct.

3. The defendant's argument that Mattson, one of the plaintiffs, cannot maintain an action on the stock purchase agreement because it was not a party to that agreement, need not detain us. As indicated, it was stipulated that despite the fact that there were two plaintiffs there was to be but one recovery. We were informed at the arguments that recovery was sought only by the plaintiff Sloan. Thus any discussion of Mattson's right to recover would be academic.

*Exceptions overruled.*