**Dr. Richard I. FEDDER, Plaintiff,**

v.

**James McCLENNEN, Defendant.**

**Civil Action No. 94–10014–NG.**

United States District Court,
D. Massachusetts.

Oct. 24, 1996.

29

Richard T. Williams, Vito A. Costanzo, Los Angeles, CA, for plaintiff.

Danielle E. DeBenedictis, Boston, MA, for defendant.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

## I. *INTRODUCTION*

On January 2, 1985, plaintiff Richard I. Fedder paid $24,000 to purchase a 9.8% limited partner interest in a Florida limited partnership known as Gulfstar Partners ("Gulfstar"). Gulfstar's sole purpose was to own a yacht known as "Wequassett."

At the time of plaintiff's purchase, the two general partners of Gulfstar were defendant James McClennen and his brother-in-law, Tanfield C. Miller. In October of 1985, Fedder executed a general power of attorney which gave Miller authority to manage his assets. In particular, Fedder gave Miller authority to write checks on Fedder's account, and to "sign and acknowledge, file and record ... a Certificate of Limited Partnership, as well as any amendments thereto...."

During the next three years, Miller proceeded to transfer funds totalling $107,833 from Fedder's checking account to the partnership. Each check included the notation "capital contribution" or "quarterly contribution." Moreover, all of these payments were reflected on Gulfstar's annual tax returns as "capital contributed during year" by Fedder.

On January 6, 1987, defendant McClennen wrote to Miller, asking to resign as a Gulfstar general partner. His letter stated:

This letter will confirm our discussion this past week with respect to Gulfstar Partners Limited. In that you are predominantly handling the boat and there are potential risks from an operation as we have discovered, we cannot obtain adequate commercial insurance. Please accept my resignation as a General Partner of Gulfstar Partners Limited.

Copies of the letter were sent to all of Gulfstar's limited partners, including plaintiff.

On April 25, 1987, Miller prepared a document entitled "Third Amendment to the Certificate and Agreement of Limited Partnership of Gulfstar Partners, Ltd." The Amendment declared that "the parties do hereby agree to [sic] pursuant to Section 16.3 [1] agree [sic] to the removal effective this date of James C.A. McClennen as a General Partner except as to Section XIII and Section XIII–7b of this agreement." [2] The Amendment also provided that "[t]he parties further agree that all the terms and conditions of the partnership agreement have been complied with to release James C.A. McClennen from any obligations except to the extent of any indebtedness currently on the vessel 'Wequassett.'" Miller signed the document on his own behalf, and under powers of attorney on behalf of all of the limited partners of the partnership, including plaintiff. On May 1, 1987, Miller wrote to plaintiff confirming that McClennen had resigned as a general partner.

On September 2, 1988, Gulfstar sold its only asset, the vessel Wequassett, and then dissolved. The sale price of the vessel was insufficient to pay the outstanding mortgage, leaving the partnership with no assets to distribute to its members. The remainder of the mortgage loan, $129,781 was paid by McClennen personally.[3]

Plaintiff filed this action on January 4, 1994. He alleges, in essence, that the various payments made by Miller on his behalf were not capital contributions but were loans, which Gulfstar was required to repay to him upon its dissolution. Plaintiff contends that because Gulfstar failed to repay him, McClennen, as a former general partner of Gulfstar, is personally liable for the debt.

Defendant responds that, under the Third Amendment to the Gulfstar partnership agreement, he ceased to be a Gulfstar general partner and was released from any obligations to the limited partners, and therefore is not liable for any failure by Gulfstar to repay loans after that date. Defendant also contends that plaintiff's action is barred by the statute of limitations.

Defendant has lodged a counterclaim contending that under the terms of the Gulfstar partnership agreement, plaintiff is liable to him for a pro rata share of the amount he paid to cover the shortfall on the Wequassett mortgage loan.

The parties have filed cross-motions for summary judgment as to plaintiff's claim. For the reasons stated below, plaintiff's motion is **ALLOWED** and defendant's motion is **DENIED**.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

A motion for summary judgment will be granted when all the relevant pleadings, viewed in the light most favorable to the non-moving party, present no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir.1992); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

---

**1.** Section 16.3 provides that a general partner may not retire from the partnership without the written consent of a majority interest of the limited partners.

**2.** The two latter sections relate to the allocation of net income and losses as between the general partners and the limited partners.

**3.** As a general partner, McClennen was personally liable for all partnership debts incurred prior to his resignation, including the partnership's obligation on the mortgage loan.

### B. Whether Gulfstar Was Obligated to Repay Monies Advanced by the Plaintiff

The facts in this case are essentially undisputed. Miller, as attorney-in-fact for plaintiff, wrote a series of checks on plaintiff's account during the years 1985–1987, and deposited them into Gulfstar's account. The checks, which totalled in excess of $100,000, each contained a notation identifying the check as a "capital contribution" or a "quarterly contribution." Miller was also a general partner of Gulfstar and plaintiff's personal accountant. In these capacities, he recorded the payments as "capital contributions" both on Gulfstar's tax returns and on plaintiff's personal financial statement.

Notwithstanding Miller's characterization of the payments, the Gulfstar partnership agreement specifically prohibited additional capital contributions from limited partners, except in circumstances not applicable here,[4] and required that additional advances from partners be treated as interest bearing loans. Section 15.1 of the agreement provided that if a limited partner loans or advances money to the partnership,

> the amount of any such loan or advance shall not be deemed an increase in or contribution to the capital account of the lending partner.... Other than as expressly provided herein, the amount of any such loan with interest thereon at one percent (1%) in excess of the prime rate ... shall be deemed an obligation of indebtedness from the Partnership to such lending Partner payable out of cash flow of the Partnership before any distributions to the Partners....

I interpret this provision to mean that the payments of the sort made by Miller on Fedder's behalf were to be considered loans under the partnership agreement, notwithstanding Miller's or Fedder's intent. I therefore conclude that Gulfstar's receipt of these payments created a debt from Gulfstar to plaintiff, which Gulfstar was obliged to repay with interest.

### C. Whether Defendant Was Released From Plaintiff's Claim

Having found Gulfstar indebted to plaintiff, I must now address the two affirmative defenses raised by defendant. First, defendant contends that he was released from any liability in this matter by the Third Amendment to the Gulfstar partnership agreement. As noted above, the Amendment included a provision which stated that the parties agreed that "all the terms and conditions of the partnership agreement have been complied with to release James C.A. McClennen from any obligations except to the extent of any indebtedness currently on the vessel 'Wequassett.'"

In order for a release to be effective, however, it must be supported by consideration. *Sloan v. Burrows,* 357 Mass. 412, 415, 258 N.E.2d 303 (1970). There is no evidence in this case that plaintiff ever received any consideration for this purported release. Defendant contends that the consideration was given because "the defendant agreed to remain liable for indebtedness remaining on the vessel Wequassett." This is not proper consideration, however, because the defendant was already liable for indebtedness on the vessel Wequassett under the Gulfstar partnership agreement.

A resigning general partner of a limited partnership is personally liable for the debts of the partnership made prior to his resignation. *See* Fla.St.Ann. § 620.125(2) (general partner of limited partnership has, subject to contractual modifications, same liabilities as general partner of a partnership without limited partners); Fla. St.Ann. § 620.8306(1) (partners are liable jointly and severally for all obligations of partnership); Fla.St.Ann. § 620.8703(1) (dissociation from partnership does not discharge partner's liability for obligations of partnership incurred before dissociation). The performance of a

---

**4.** Sections 7.1 and 7.2 of the agreement provide for certain stated sums to be invested by the limited partners at the outset of the partnership. Section 7.3 of the agreement provides that upon written request of the general partners, the limited partners could be required to contribute additional sums, not to exceed $30,000, on a pro rata basis. The general partners made no such written request, and no such payments were made by all of the limited partners on a pro rata basis.

preexisting obligation is not sufficient consideration for a release unless there is a genuine dispute as to the existence or nature of the obligation. *Sloan,* 357 Mass. at 415, 258 N.E.2d 303. There is no evidence of any such dispute here.[5]

### D. *Statute of Limitation Defenses*

As a second line of defense, defendant contends that plaintiff's claim is barred by the statute of limitations. Defendant argues alternatively that plaintiff's claim is barred under by the statute of limitations of California, Florida and Massachusetts.[6] I will address each of these claims in turn.[7]

#### 1. *Whether California's Statute of Limitations Bars Plaintiff's Claim*

■ California imposes a four year limitations period on contract claims. Cal.Code. Civ.Pro. § 337. Although the Gulfstar partnership agreement was executed in Florida and purports to be governed by Florida law, defendant contends that California's limitation period applies here by operation of the so-called "borrowing clause" of the Massachusetts Tolling Statute, M.G.L. ch. 260, § 9.[8] This statute provides as follows:

> If, when a cause of action hereinbefore mentioned accrues against a person, he resides out of the commonwealth, the action may be commenced within the time herein limited after he comes into the commonwealth; and if, after a cause of action has accrued, the person against whom it has accrued resides out of the commonwealth, the time of such residence shall be excluded in determining the time limited for the commencement of the action; *but*

> *no action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein.* (emphasis added)

Defendant contends that because plaintiff is a California resident, the emphasized language of the Tolling Statute requires that California's limitation period apply to this case, barring plaintiff's claim.

The Tolling Statute is an ancient, little-used law, *see Wilcox v. Riverside Park Enterprises, Inc.,* 21 Mass.App.Ct. 419, 419, 487 N.E.2d 860 (1986) *rev'd on other grounds* 399 Mass. 533, 505 N.E.2d 526 (1987), which harks back to a time when the jurisdiction of state courts was based on the physical presence of the defendant or his property. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (overruling *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877)).

■ The statute appears on its face to toll the limitations period while a defendant resides outside of Massachusetts. However in *Walsh. v. Ogorzalek,* 372 Mass. 271, 361 N.E.2d 1247 (1977), the Massachusetts Supreme Judicial Court (SJC) made clear that the purpose of the statute was "to prevent a potential defendant from insulating himself from liability by placing himself for a time beyond the reaches of the law for purposes of service." *Id.* at 274, 361 N.E.2d 1247. Thus, when a defendant is subject to service, either through statutory agent or under the long-arm statute, the Tolling Statute does not apply. *Id.* at 273–275 & n. 3, 361 N.E.2d 1247.

---

**5.** Defendant also asserts that the claims against him are barred because of the settlement of a separate action which plaintiff brought against Miller in the United States District Court for the Southern District of Florida. He relies on a purported Florida rule that the release of one of several joint obligors on a contract has the effect of releasing all of them. However, this has not been the law in Florida since at least 1980, when the legislature abrogated the common law rule to which defendant refers. *See Stephen Bodzo Realty, Inc. v. Willits Int'l Corp.,* 428 So.2d 225, 226 (Fla.1983); Fla St. Ann. § 46.105.

**6.** This action was commenced on January 4, 1994. Plaintiff concedes that his cause of action

arose no later than September 2, 1988, the date on which the Gulfstar partnership dissolved.

**7.** The defendant made similar arguments in connection with his earlier motion for judgment on the pleadings under Fed.R.Civ.P. 12(c). For the sake of completeness I review and elaborate on them here.

**8.** Since this case is here under the court's diversity jurisdiction, the law of the forum state determines what limitations period applies. *West v. Conrail,* 481 U.S. 35, 39 n. 4, 107 S.Ct. 1538, 1541 n. 4, 95 L.Ed.2d 32 (1987).

■ Defendant seeks to avoid the implications of this principle by focussing only on the final clause of the statute, the so-called "borrowing clause," which provides "but no action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein." The clause is ambiguously written and could be understood as only modifying the rest of the statute, or as having independent effect. *Wilcox v. Riverside Park Enterprises, Inc.*, 399 Mass. 533, 535, 505 N.E.2d 526 (1987).

In *Wilcox*, however, the SJC resolved the ambiguity, and foreclosed defendant's reliance on the borrowing clause, by holding that "the Legislature intended the borrowing clause of c. 290, § 9 to apply only as a qualification to the tolling provisions of § 9." *Id.* at 539, 505 N.E.2d 526. Since under *Walsh*, the tolling statute does not apply in this case,[9] it follows from *Wilcox* that the "borrowing clause" is similarly inapplicable.

### 2. *Whether Florida's Statute of Limitations Bars Plaintiff's Claim*

■ Defendant next attempts to interpose Florida's 5-year limitations period for contract actions, Fla. St. Ann. § 95.11(2)(b), in order to bar plaintiff's claim. He reasons that the Gulfstar partnership agreement is governed by Florida law, and that Florida's statute of limitations should be considered part of the substantive Florida law applicable in this case. Defendant is on somewhat firmer ground here, since his argument is at least consistent with recent SJC authority. His argument fails, however, because the authority upon which he relies effected a change in Massachusetts practice with only prospective effect. Since the instant case was commenced prior to this change, defendant is not entitled to benefit from it.

Prior to 1995, Massachusetts courts treated statutes of limitations as "procedural" rather than "substantive," and therefore automatically applied Massachusetts' statute of limitations to all claims brought before them. *New England Telephone & Telegraph Co. v. Gourdeau Const. Co., Inc.*, 419 Mass. 658, 647 N.E.2d 42 (1995). In *Gourdeau*, however, the SJC, following a nationwide trend, concluded that its former *per se* rule was no longer viable. Instead, it adopted the position of the Restatement (Second) of Conflict of Laws § 142 comment e (1988 Rev.), and held that the appropriate limitations period should be determined by applying a "functional approach" to determine "the state which, with respect to the issue of limitations, is the state of most significant relationship to the occurrence and to the parties...."[10] *Id.* at 663, 647 N.E.2d 42. Where Massachusetts' limitation period would otherwise permit the action to proceed, it will not be applied if "(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." Restatement (Second) of Conflict of Laws § 142 (1988 Rev.).

Application of the Restatement position in this case would likely lead to the conclusion that Florida had "the most significant relationship to the occurrence and to the parties." *Gourdeau*, 419 Mass. at 663, 647 N.E.2d 42. Neither party is a Massachusetts resident and Gulfstar was a Florida limited partnership. Gulfstar's operations were managed primarily by Mr. Miller in his Flori-

---

**9.** As I determined in considering defendant's motion for judgment on the pleadings pursuant to Rule 12(c), defendant was at all times subject to this court's jurisdiction under the Massachusetts Long-Arm Statute, M.G.L. ch. 223A, § 3(a).

**10.** Section 142 of the Restatement provides that: Whether a claim will be maintained against the defense of the statute of limitations is determined under the [general conflict of laws] principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:

(1) The forum will apply its own statute of limitations barring the claim.

(2) The forum will apply its own statute of limitations permitting the claim unless:

(a) maintenance of the claim would serve no substantial interest of the forum; and

(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

da office. Although Gulfstar apparently received mail and stored the Wequassett in Massachusetts from time to time, it is undisputed that the monetary transfers at issue here were executed in Florida.

I find, however, that the new rule announced in *Gourdeau* should not apply to the instant dispute. The structure of the *Gourdeau* decision suggests that the SJC did not intend the new rule to apply to claims which arose prior its adoption. Although the Court analyzed Gourdeau's statute of limitations claim using the functional approach, it reached the same result as had the trial court applying the *per se* rule. It then stated,

> "[t]he [lower court] judge was correct in denying Gourdeau's motion for summary judgment on the contract count. We state *for the future* that this court's treatment of the application of statutes of limitations as procedural will no longer be continued.... The order denying the motion of Gourdeau ... for summary judgment on the contract count of its complaint is affirmed."

*Id.* at 664, 647 N.E.2d 42 (emphasis added).

I understand the SJC's failure to specifically ground its ruling in *Gourdeau* in terms of the new rule, and its use of the phrase "for the future," to manifest the Court's recognition of the unfairness which would result from the rule's retroactive application. The prior Massachusetts rule was an ancient one, tracing its roots back to the case of *Bulger v. Roche*, 28 Mass. (11 Pick.) 36 (1831). *See Gourdeau*, 419 Mass. at 660, 647 N.E.2d 42. It was not unreasonable for plaintiff to expect that this rule would continue to apply when he brought this action in Massachusetts, and it would be inequitable to require him to comply with the new rule after the fact.[11] *Cf. Landgraf v. USI Film Products*, 511 U.S. 244, 275 n. 29, 114 S.Ct. 1483, 1502 n. 29, 128 L.Ed.2d 229 (1994) ("A new rule concerning the filing of complaints would not

govern an action in which the complaint had already been properly filed under the old regime....").

### 3. Whether Massachusetts' Statute of Limitations Bars Plaintiff's Claim

Massachusetts imposes a six year limitations period on contract actions. M.G.L. ch. 260 § 2. Plaintiff contends that his cause of action accrued on September 2, 1988, the date of Gulfstar's dissolution, and is therefore timely. Defendant argues that plaintiff's claim arose, at the latest, on the date defendant resigned from the partnership, April 25, 1987, and is therefore untimely.

Plaintiff has the better argument. The Gulfstar partnership agreement does not provide a specific date for the repayment of loans made under section 15.1. That section, however, does provide that the loans would be "payable out of cash flow of the Partnership before any distributions to the Partners." This section must be read in conjunction with section 14.2, which provides that "[a]fter providing for the current debts and obligations of the Partnership, the General Partners shall, annually, make distributions of cash to the Partners out of the Partnership funds to the extent available...." Section 14.2 further provides that such distributions should be made out of "net cash flow," a term defined elsewhere.

Read together, these terms suggest that the plaintiff's loans were payable, at the earliest, when Gulfstar experienced positive "net cash flow" during a fiscal year. It is undisputed, however, that Gulfstar never experienced a positive "net cash flow" during the time that plaintiff's loans were outstanding. The loans did not become payable, therefore, until the date of Gulfstar's dissolution, when the partnership was required by law to pay

---

11. Even if *Gourdeau* was applicable retroactively, I would not be inclined to apply it here because defendant failed to raise it in a timely fashion. Defendant never raised the issue in his memorandum supporting his motion for summary judgment. To the contrary, he cited *Gourdeau* only in a footnote with the comment that "this decision comes to [sic] late for Mr. McClen-

nen." Memorandum of Law in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross–Motion for Summary Judgment at p. 7, n. 5. It was only in defendant's surreply that this issue was squarely addressed, thus denying plaintiff the opportunity to respond.

its outstanding liabilities. *See* Fla. St.Ann. § 620.162(1) (West.1993) (upon winding up of limited partnership, the assets "must be distributed" first to creditors).

Plaintiff's argument, that any liability on his part accrued on the date of his resignation as a general partner, is unavailing. A general partner who withdraws from a partnership is not discharged from his liability for a partnership obligation incurred before dissociation. Fla.St.Ann. § 620.8703(1). This obviously includes obligations with respect to debts which have not yet matured. Defendant's resignation did not cause him to become immediately liable to plaintiff, but only contingently liable in the event that Gulfstar failed to repay him when it was obliged to do so. Since that failure did not occur until 1988, plaintiff's claim against defendant did not accrue until that time.[12]

Accordingly, I conclude that plaintiff's claim is not barred by the Massachusetts statute of limitations.

### E. *Defendant's Counterclaim*

Finally, defendant contends that summary judgment is inappropriate because he has an outstanding counterclaim against plaintiff. Defendant's counterclaim alleges that the Gulfstar partnership agreement required each limited partner, including plaintiff, to guarantee personally a proportionate share of the mortgage loan on the vessel Wequassett. The counterclaim further alleges that after the dissolution of the partnership and the sale of the Wequassett, defendant paid the mortgage loan shortfall personally, thereby creating an obligation on plaintiff's part to reimburse him for a proportionate share.

The existence of this outstanding claim is not a bar for summary judgment on the issues current before the court. Pursuant to Fed.R.Civ.P. 54(b), however, final judgment will not enter in this case until the claims of all the parties have been adjudicated.[13]

## III. *CONCLUSION*

The court concludes, based on the undisputed evidence, as follows:

1) Between January 2, 1985 and September 2, 1988, plaintiff was a limited partner in the Gulfstar limited partnership.

2) During 1985, Tanfield Miller, as attorney-in-fact for plaintiff and as general partner of Gulfstar, transferred $6,883 from plaintiff's account to Gulfstar.

3) During 1986, Miller transferred $42,258 from plaintiff's account to Gulfstar.

4) During 1987, Miller transferred $58,692 from plaintiff's account to Gulfstar.

5) Under the Gulfstar partnership agreement, these transfers were considered loans, and created an obligation on the part of Gulfstar to repay them with interest, out of Gulfstar's net cash flow, or upon Gulfstar's dissolution.

6) Defendant was a general partner of Gulfstar from its creation until April 25, 1987.

7) Defendant is personally liable for all obligations incurred by Gulfstar prior to April 25, 1987. Therefore, he is liable for all of the advances of plaintiff's money made by Miller prior to April 25, 1987, plus accrued interest.

8) Plaintiff's claims are not barred by any statute of limitations, nor by operation of plaintiff's settlement of claims against Miller.

---

12. Defendant's reliance on *Ross v. Stanley,* 346 F.2d 645, 650 (5th Cir.1965) *cert. denied* 382 U.S. 1026, 86 S.Ct. 644, 15 L.Ed.2d 540 (1966) is misplaced. In *Ross,* the court held that the limitations period on a breach of fiduciary duty claim commenced upon the date of the alleged breach, even where the damages arising from such breach did not become manifest until sometime later. *Ross* has no applicability to this breach of contract action because defendant had not breached any contractual obligation as of the time of his resignation.

13. Defendant also contends that he is entitled to a credit based on a settlement of claims between plaintiff and Miller. That settlement is not in the record, however. Although defendant contends that plaintiff refused to disclose the settlement, citing a confidentiality agreement, there has been no motion before this court to enforce discovery, nor has defendant moved for additional discovery under Fed.R.Civ.P. 56(f). This court cannot speculate as to the terms of plaintiff's settlement with Miller.

**36**

9) Final judgment shall not enter in this case until defendant's counterclaim has been adjudicated or dismissed.

**SO ORDERED.**