DECISION
General Accident Insurance Company of America (plaintiff) is seeking contribution and/or indemnification from Budget Rent A Car System, Inc. (defendant) in the amount of $19,500. representing payments of $1,203. in medical expenses for Donald Wells, a total of $5,000 in medical expenses for Christine Wells, $3,297. in uninsured/underinsured motorist (UM) benefits for Donald Wells, and $10,000. in UM benefits for Christine Wells. The defendant argues that a signed release relieves it from liability and plaintiff has no right of action against the defendant for contribution or indemnification.
 Facts/Travel
The parties have agreed to the facts as appended hereto.[1]
A supplemental stipulation was filed with the Court on July 28, 1999. See letter dated 7/28/99. The plaintiff filed suit in Superior Court on October 24, 1994. The defendant moved for summary judgment, and the plaintiff made a cross motion for summary judgment on the same grounds. Both motions were denied on December 1, 1995.
 Choice of Law
The plaintiff argues that Massachusetts law applies in construing Budget's obligations under the Insurance Company of North America (INA) policy. The defendant argues that Rhode Island law applies.
In Rhode Island, courts will carry out the intent of the contracting parties by honoring their specific choice of law provision in the contract. Owens v. Hagenback-Wallace Shows Co.,192 A. 158 (R.I. 1937). In the absence of such a provision; the contract will be interpreted under the law of the state where the contract is completed. Acceptance of the offer, Tim Henigan Co.,Inc. v. Anthony A. Nunes, Inc., 437 A.2d 1355, 1357 (R.I. 1981), or "the final act which constitutes making of the contract," A.C.Beals Co. v. R.I. Hosp., 110 R.I. 275, 292 A.2d 865, determines the state of completion. Hence, life insurance contracts made in Rhode Island are to be construed under the laws of Rhode Island.Brady v. Norwich Union Fire Insurance Society, 133 A. 799 (R.I. 1926). Likewise, an uninsured motorist policy executed and delivered in Massachusetts to a Massachusetts corporation with a principal place of business in Massachusetts will be construed under Massachusetts law. Baker v. Hanover, 568 A.2d 1023 (R.I. 1990).
In the instant case, the INA policy covered the vehicle which was registered in Massachusetts to Budget, a Delaware corporation with a Massachusetts address. The Massachusetts Mandatory Endorsement detailed both the Personal Injury Protection (PIP) coverage, and the Uninsured Motorist (UM) coverage with respect to Massachusetts-registered cars. However, neither the Agreed Statement of Facts, nor the parties' briefs make it clear where the insurance policy was executed and delivered. The policy itself is similarly uninformative: the named insurer is Beech Holdings Corp. (apparently the parent company of Budget) with an Illinois address.
The Wellses rented their car in Warwick, Rhode Island and executed the rental contract there as well. However, GAI brings suit to enforce Budget's obligations outlined in the I.N.A. policy. Thus, the INA policy, and not the rental contract, forms the basis of Budget's liability. See United States Fire InsuranceCompany v. Baker Car Rental, 944 F. Supp. 739, 743 (S.D. Ind. 1996) (rev'd on other grounds, 132 F.3d 1153 (7th Cir. 1997)). Choice of law principles are controlled by the insurance agreement between the insurance company and the rental company, not the rental contract.
Where, as here, the location of the completion of the INA policy is not known, the court may then look to other factors, such as the principal location of the insured risk, to determine the rights of the parties. See Schultz v. Hastings, 5 Wis.2d 265, 270 (1958) (court applied the "place of execution" test when the "place of performance" could not be ascertained).
Presumably, the policy issued to Beech Holdings Corp. insured against risks located in several states: Budget offices are located in many states and cars are mobile by nature. Here, "the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved [several] policies, each insuring an individual risk." Restatement (Second) Conflictsof Law § 193 at cmt. f. Thus, the law of the place of the completion of the contract does not necessarily govern construction of so-called "multiple risk" contracts. See id. "In any event, that part of the policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state." Id.
Here, the Massachusetts Mandatory Endorsement complies with the statutorily mandated UM coverage. Said section provides that "when [the laws of Massachusetts relating to auto insurance] apply, they are a part of this policy." (Policy P. 4 Mandatory Endorsement). Accordingly, the court will use Massachusetts law to construe the policy. See Baker, 568 A.2d at 1025; Restatement (Second) Conflicts of Law § 193 at cmt. f.
 The Coverage
The plaintiff argues that not only did the terms of the contract specifically provide UM coverage for this vehicle, but also that such coverage is mandated by M.G.L.A. c. 175, Sec. 113L(1) for every policy "issued or delivered in the commonwealth with respect to a motor vehicle . . . registered in this state. . . ." The defendant counters that, under Rhode Island law, UM coverage is not required for cars registered in Massachusetts.
Massachusetts law applies. Under § 113L, Budget was required to obtain UM coverage on the car. Furthermore, the Massachusetts Mandatory Endorsement section specifically allows for Budget to "pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured orunderinsured motor vehicle." Massachusetts Mandatory Endorsement at 4 (emphases added). Accordingly, the vehicle is covered by UM coverage. See Schwanbeck v. Federal-Mogul Corp., 592 N.E.2d 1289,412 Mass. 703 (1992) (unambiguous agreement must be enforced according to its terms).
 The Waiver
The defendant further argues that even assuming Budget offered UM coverage to the Wellses, they waived their right to it pursuant to the language on the back of the rental agreement. The plaintiff alternatively argues that the waiver is ineffective because it attempts to circumvent the legislative policy of MGLA c. 175 § 113L.
Section 113L mandates UM coverage for every policy "issued or delivered in the commonwealth with respect to a motor vehicle . . . registered in this state. . . ." "The aim of the statute . . . is to minimize the catastrophic loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors." Surrey v. Lumbermens Mutual Casualty Co.,384 Mass. 171, 177, 424 N.E.2d 234 (1981). "Provisions of a rental agreement `cannot prevail if [they are] contrary to the statutory policy of 113L.'" Hartford Ins. Co. v. Hertz Corp., 572 N.E.2d 1, 5 (Mass. 1991) (citing Cardin v. Royal Ins. Co., 394 Mass. 450, 454, 476 N.E.2d 200 (1985)). In Hartford, the court held that the language in a car rental agreement which "waived" UM coverage did not relieve Hertz of its obligation to provide the coverage mandated by the statute. Id. Similarly, the "waiver" language on the back of the Wellses' rental agreement cannot and does not relieve Budget of its obligations to honor the UM provisions. Seeid.
 The Release
A. Consideration
The release signed by the Wellses states that it relieved both Budget and GAI from any liability arising from the July 6, 1993 accident. Specifically, the release provides that the Wellses
 ". . . hereby remise, release, and forever quitclaim to the said General Accident Insurance Company of America and to Budget Rent A Car Corporation . . . any and all manner of actions arising out of an accident that occurred on or about July 6, 1993 . . ."
This language, argues the defendant, releases it from its duty to indemnify General Accident. Budget reasons that GAI rights to indemnification and/or contribution flow from the Wellses' right to coverage. Thus, the defendant contends that when the Wellses released Budget from any claims, GAI's right to indemnification/contribution based on those claims was extinguished.
The rules of subrogation would apply here, prohibiting GAI from bringing any claim arising out of the accident because they, as subrogors, are not able to do so pursuant to the Wellses' release. An insurer-subrogor "can take nothing by subrogation but the rights of the assured; and if the assured has no right of action, none passes to the insurer." Silva v. Home Indemnity Co., 416 A.2d 662, 664 (R.I. 1980) (citing St. Louis Iron Mountain Southern Railway v. Commercial Union Insurance Co., 139 U.S. 223, 235, 11 S.Ct. 554, 557, 35 L.Ed. 154, 157 (1891)). Thus, when the Wellses released Budget from their own claims, they would also release Budget from GAI's subrogation claim.
However, the release would operate to extinguish G.A.I.'s indemnification/contribution claim only if the release itself were valid. In Fedder v. McClennan, it was reaffirmed that "for a release to be effective, it must be supported by consideration,"959 F. Supp. 28, 31 (D.Mass. 1996) (citing Sloan v. Burrows,258 N.E.2d 303 (Mass. 1970)). See also Gugliemi v. Rhode Island HospitalTrust Financial Corporation, 573 A.2d 687, 689 (R.I. 1990) (establishing that a release will be determined valid "in light of three factors . . . [including] the existence of consideration for the release . . ."). Without valued consideration for the release, there cannot be a legitimate exchange.
In the instant case, Budget offered no consideration in exchange for the release. The consideration presented to the Wellses in return for their release was made entirely by GAI, as evidenced in the final release. The Wellses were paid $44,500. "by the General Accident Insurance Company of America" without any contribution from Budget. Full and Final Release of AllClaims, p. 1, Sept. 2, 1994. Therefore, due to the absence of any consideration in exchange for the agreement, the release is neither effective nor valid.
B. Equitable Indemnification
The plaintiff alternatively argues that it is entitled to equitable indemnification from the defendants because it discharged a debt for which defendants were partially, if not wholly, liable. Thus, the plaintiff contends that even if the release were found valid and effective, principles of equity demand that the defendants indemnify or contribute based on their liability.
"At common law, a right to indemnity is generally contractual in nature. However, it is held that indemnity may also be based on equitable principles." Wilson v. Krasnoff, 560 A.2d 335 (R.I. 1989). The "right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another." Decker v. Black DeckerMfg. Co., 449 N.E.2d 641 (Mass. 1983). Our Supreme Court recently noted that:
 "[T]he theory underlying the concept of equitable indemnity is that "one who has been exposed to liability solely as the result of a wrongful act of another should be able to recover from that party . . . If another person has been compelled to pay damages that should have been paid by the wrongdoer, the latter becomes liable to the former. DiMase v. Fleet National Bank, 723 A.2d 765, 768 (R.I. 1999) (quoting Muldowney v. Weatherking Products, Inc., 509 A.2d 441, 443 (R.I. 1986))."
This theory would apply despite any settlement, release, or adjudication which has taken place because "[e]quity regards that as done that ought to have been done." Morris Gordon Son v.Totoni, 85 N.E.2d 319 (Mass. 1949).
To find that GAI had no claim against Budget would be to release Budget from its responsibility to GAI and endorse the practice of burdening a party who is not at fault. Since the defendant is clearly liable to the plaintiff in this case, equitable principles mandate indemnification and/or contribution.
Pursuant to its INA insurance policy, Budget is liable for up to $10,000. in UM coverage for each person involved in an accident. Budget is therefore obligated to reimburse GAI for the $10,000. in UM benefits paid to Christine Wells, and the $3,297. in UM benefits paid to Donald Wells. Furthermore. Budget is liable for Donald Wells's $1,203. in medical expenses and for $2,000. worth of Christine Wells's medical expenses pursuant to the same INA insurance policy which incorporates the Massachusetts Mandatory Endorsement regulations which limit Personal Injury Protection (PIP) medical expense payments to $2,000. per person. Finally, Budget is liable to GAI for the Personal Accident Insurance that was purchased by the Wellses as part of the rental agreement. The three thousand dollars of personal accident insurance as applied to medical expenses is valid as to Christine Wells only, as her medical expenses totalled $9,043.20.
Counsel shall submit the appropriate judgment for entry.
[1] Because of the numerous documents in the agreed statement of facts, not all of the documents are appended to this decision but they are included in the case file.